# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LOUIS MANZO,<br><br>Defendant. | Civil Action No.: 09-759 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

Defendant Louis Manzo ("Defendant") is charged with two counts of travel in interstate commerce to promote, carry on and facilitate bribery in violation of 18 U.S.C. § 1952(a)(3) and § 2 a misprision of a felony in violation of 18 U.S.C. § 4. This matter comes before the Court by way of Defendant's omnibus pretrial motions filed respectively on September 27, 2011 and October 18, 2011 [Docket Entry Nos. 64 ("First Mot.") and 66 ("Second Mot.")]. On January 26, 2012, this Court held a hearing on said motions, and disposed of two motions by mutual consent of the parties and reserved on others. As set forth on the record of said hearing, the Parties reached agreement that: (1) the Government will preserve the notes of FBI agents as requested in Defendant's first Motion (Def. First Mot., at 39); and (2) the Government and the Defendant agree to cooperate regarding discovery requested by Defendant and reciprocal discovery requested by the Government (Def. First Mot., at 37-38). The Court reserved on the following motions: (1) Defendant's motion to dismiss all counts of the Second Superseding Indictment ("Indictment") on the grounds that actions attributed to

Defendant did not violate the Travel Act; (2) Defendant's motion to dismiss the Indictment entirely as violating Defendant's Tenth Amendment rights; (3) Defendant's motion to compel discovery and seeking an evidentiary hearing related to the grand jury proceedings; (4) and, finally, a motion by Defendant to dismiss the Indictment or appoint a special prosecutor based on alleged prosecutorial misconduct. The Parties supplemented their motion filings with the court's permission on January 27, January 30, January 31, and February 6, 2012. The Court has considered the oral arguments presented at the January 26th hearing and the written submissions made in support of and in opposition to Defendant's motions, including the aforementioned supplemental materials. For the reasons set forth below, this Court: (1) grants Defendant's motion to dismiss the Second Superseding Indictment; (2) denies Defendant's motion for discovery and an evidentiary hearing of the grand jury proceedings; and (3) dismisses all remaining motions as moot.

## I.  BACKGROUND

Defendant Louis Manzo was a candidate for mayor of Jersey City, New Jersey during elections held on May 12, 2009, in which he did not prevail. (Indictment, ¶ 1(a)). During the period of the Indictment, Defendant did not hold public office, nor does the Government allege that Defendant held a public position subsequent to the termination of his representation of the 31st Legislative District in the New Jersey General Assembly in 2008. (Id.).

It was during the period of Defendant's candidacy for mayor that he was introduced to Solomon Dwek, a cooperating witness for the Federal Bureau of Investigation ("FBI"). Dwek was assisting the Government in a broader public

corruption investigation by posing as a real estate developer looking for assistance in expediting his development projects through local government processes. Defendant was introduced to Mr. Dwek by Edward Cheatam, the then affirmative action officer for Hudson County and a Commissioner on the Jersey City Housing Authority in Jersey City, and Jack Shaw (now deceased), a political consultant based in Jersey City who was an acquaintance of Defendant Manzo. (Id., ¶ 1(d), (f)). The Indictment alleges two improper transactions arose from the introduction of Mr. Dwek to the Defendant and subsequent meetings at which, in consideration for his agreement to accept or his acceptance of a pecuniary benefit, Defendant promised future official assistance as mayor in: (1) obtaining certain development approvals on Mr. Dwek's behalf in relation to a property located on Garfield Avenue in Jersey City (the "Garfield Development"); and (2) promoting Maher Khalil, an employee of the Jersey City Department of Health and Human Services and former member of the Jersey City Zoning Board of Adjustment to a higher position within the Jersey City government ("Promotion Transaction"). (Id., ¶ 3). The Government alleges that the transactions occurred between January 26, 2009 and April 23, 2009 as follows.

On January 26, 2009, Mr. Cheatam, Mr. Khalil and Mr. Dwek met at a restaurant in Weehawken, New Jersey, where Mr. Khalil suggested that Mr. Dwek meet with Defendant in connection with approvals for Mr. Dwek's purported real estate development in Jersey City. (Id., ¶ 4(a)). Mr. Cheatam advised that a meeting with Defendant could "cover" Mr. Dwek's development interests in case Defendant were elected in the upcoming mayoral election. (Id.). At that time, Mr. Cheatam also cautioned that any such meeting between Mr. Dwek and Defendant had to occur outside

of Jersey City since Mr. Cheatam could not openly support Defendant's mayoral candidacy. (Id.).

Mr. Cheatam and Mr. Dwek met again on February 16, 2009, at a restaurant in Jersey City during which meeting they discussed paying Defendant "cash" in exchange for his future official assistance in favor of Mr. Dwek's purported development projects in Jersey City. (Id., ¶ 4(b)). Mr. Cheatam and Mr. Dwek met the following day, on February 17, 2009, when they were joined by Mr. Shaw. (Id., ¶ 4(c)). At that meeting, the parties continued to discuss Mr. Dwek's purported development interests in Jersey City and the arranging of a meeting with Defendant to give him cash as "insurance" "for his anticipated official assistance, action and influence" in the event he were to be elected mayor. (Id.). Mr. Shaw and Mr. Cheatam then agreed to accept for themselves an equal amount in cash from Mr. Dwek as Mr. Dwek paid to Defendant. (Id.).

Count I of the Indictment is based on Defendant's first meeting with Mr. Dwek which occurred on February 23, 2009, at a restaurant in Staten Island, New York, where the parties were joined by Defendant's brother, Ronald Manzo, and Mr. Cheatam. (Id., ¶ 4(d)). The transcript of the meeting indicates that, prior to Defendant's arrival, Mr. Cheatam told Mr. Dwek that he "mentioned to Lou . . . Manzo that I want Maher for that position," that Mr. Dwek confirmed, "Yeah, yeah. Okay, yeah, to bump him," and Mr. Cheatam said, "Right. He said he has no problem with it." (Pl. Jan. 26, 2012 Letter, Ex. A, Feb. 23, 2009 Tr., 16:20-17:1). The following conversation confirmed that the promotion discussed was that of Mr. Khalil by Defendant to the position of Director of the Department of Health and Human Services, and that there would be "no problem. We'll throw the other guy out." (Id., 17:11-14). Once Defendant and Mr. Ronald Manzo

arrived, Mr. Cheatam allegedly explained to them that he and Mr. Dwek were meeting with them so that they would be "favorable" towards Mr. Dwek's plans for the Garfield Development. Specifically, Mr. Cheatam stated that Mr. Dwek would make contributions to Defendant's mayoral campaign in exchange for expedited development "approvals" if Defendant won the mayoral election. (Id., ¶ 4(d)).

After Defendant and Mr. Ronald Manzo left the meeting, Mr. Cheatam confirmed that Mr. Dwek would bring $10,000 cash to the following meeting to be paid to Mr. Ronald Manzo. (Id., ¶ 4(f)). On February 25, 2009, Mr. Ronald Manzo met with Mr. Cheatam and Mr. Dwek at a restaurant in Staten Island where Mr. Cheatam coordinated with Mr. Dwek to receive the cash payment intended for Defendant which he would then give to Mr. Ronald Manzo. (Id., ¶ 4(g)). The parties discussed the concealment of Mr. Dwek's contemplated cash payments, and Mr. Ronald Manzo instructed Mr. Dwek to refrain from openly discussing payment matters with the Defendant, but rather in any future discussions with Defendant, Mr. Dwek should refer to both the approvals and the promotion transaction as "opportunities." (Id., ¶ 4(g)-(i)). Finally, at the end of the meeting, Mr. Cheatam, in Mr. Ronald Manzo's presence, accepted an envelope containing approximately $10,000 cash from Mr. Dwek, and Mr. Dwek advised Mr. Ronald Manzo that Mr. Dwek was making an "investment" in Defendant and Mr. Ronald Manzo in consideration for Mr. Dwek's development approvals. (Id., ¶ 4(j)). On the same day, Mr. Cheatam told Mr. Dwek that Mr. Ronald Manzo was "happy" with the $10,000 payment, and confirmed the use of a code word to discuss the development approvals that Mr. Dwek sought. (Id., ¶ 4(k)). Mr. Cheatam also stated that he had spoken with Defendant and Mr. Ronald Manzo, and that they had indicated that they

wanted additional money in exchange for Defendant's future assistance with Mr. Dwek's real estate development interests and in connection with the Promotion Transaction. (Id.).

Count II of the Indictment is based on Defendant's second meeting with Mr. Dwek which occurred on March 4, 2009, at a restaurant in Staten Island, New York, where the parties were joined again by Mr. Ronald Manzo, and Mr. Cheatam. (Id., ¶ 4(l)). Before Defendant and Mr. Ronald Manzo arrived, Mr. Cheatam confirmed with Mr. Dwek that Mr. Ronald Manzo received the $10,000 payment, and indicated that Defendant and Mr. Ronald Manzo would accept $7,500 in cash in consideration for Defendant's official support of the Promotion Transaction as well as an additional $7,500 cash to be paid once Defendant got elected. (Id.). After Defendant and Mr. Ronald Manzo arrived, the parties discussed their agreement, and Defendant confirmed receipt of the $10,000 payment, further agreeing to accept more money from Mr. Dwek at a later date, including after the mayoral election, in exchange for the Promotion Transaction and "approvals" relating to real estate developments. (Id.).

On the following day, Mr. Ronald Manzo met with Mr. Dwek and Mr. Cheatam at a restaurant in Staten Island, New York, and during that meeting, Mr. Ronald Manzo reassured Mr. Dwek that he and Defendant were "on the team" with respect to future development approvals, and Mr. Dwek informed the other two parties that he had spoken to Mr. Khalil to let him know that, after the election, Mr. Khalil would be promoted within Jersey City government. (Id., ¶ 4(o)). At the end of the meeting, the parties walked to the parking lot, and at Mr. Ronald Manzo's direction and in his presence, Mr. Cheatam accepted an envelope containing $7,500 in cash from Mr. Dwek. (Id., ¶ 4(p)).

Mr. Dwek concurrently asked Mr. Ronald Manzo to "make sure my man is taken care of," and Mr. Ronald Manzo replied in the affirmative. (Id.). Mr. Dwek further informed them that the $7,500 payment was only half of the $15,000 payment, and that the remaining $7,500 balance would be paid after Mr. Khalil's appointment, to which Mr. Ronald Manzo replied, "right." (Id.). Following that conversation, Mr. Cheatam spoke with Mr. Dwek on the phone, confirming that he had given $7,500 to Mr. Ronald Manzo, and in response, Mr. Ronald Manzo stated that, once Defendant was elected, it was "carte blanche all the way." (Id., ¶ 4(q)).

Finally, on April 23, 2009, Mr. Ronald Manzo met with Mr. Shaw, Mr. Cheatam and Mr. Dwek at a restaurant in Bayonne, New Jersey, and during that meeting, Mr. Dwek informed Mr. Ronald Manzo that he intended to submit an application for zoning approval on the Garfield Development shortly after the election, in July 2009. (Id., ¶ 4(r)). Mr. Ronald Manzo nodded in the affirmative when asked to ensure that the approval would be expedited, and Mr. Dwek told him that he would provide another cash payment to Mr. Cheatam for the benefit of Defendant in the amount of $10,000 cash after the mayoral election in exchange for Defendant's official action, assistance and influence. (Id., ¶ 4(s)). After the meeting, Mr. Cheatam met privately with Mr. Dwek in the restaurant parking lot and gave him an envelope containing $10,000 which Mr. Cheatam accepted to give to Defendant and Mr. Ronald Manzo to "[m]ake sure he gets my stuff expedited." (Id., ¶ 4(u)). After Mr. Cheatam accepted the $10,000 payment, he brought Mr. Ronald Manzo from inside the restaurant back to Mr. Dwek, and Mr. Ronald Manzo accepted an envelope containing the $10,000 cash from Mr. Cheatam. (Id., ¶

4(v)).  Later that day, Mr. Cheatam called Mr. Shaw, and when Mr. Shaw asked what was done for "Manzo," Mr. Cheatam responded, "10."  (Id., ¶ 4(w)).

Based on these facts, the Indictment alleges that Defendant knowingly and intentionally traveled in interstate commerce with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, namely bribery, by promising to expedite approvals on the Garfield Development and to promote Mr. Khalil within Jersey City government in exchange for cash payments–$10,000 on February 25, 2009, $7,500 on March 5, 2009, and $10,000 on April 23, 2009.  The Indictment also alleges that Defendant, having knowledge of the commission of felonies by Mr. Cheatam and Mr. Ronald Manzo in violation of the Travel Act and N.J.S.A. § 2C:27-2, concealed such knowledge and failed to make known the same as soon as possible to a judge or other person in civil authority under the United States.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 7(c)(1), an indictment must "be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  An indictment is deemed sufficient so long as it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution."  United States v. Vitillo, 490 F.3d 314, 321 (3d Cir. 2007).  "Moreover, no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to

invoke double jeopardy in the event of a subsequent prosecution." United States v. Kemp 500 F.3d 257, 280 (3d Cir. 2007)(internal quotations and citations omitted).

In determining whether an indictment "contains the elements of the offense intended to be charged," a district court may look for more than a mere 'recit[ation] in general terms [of] the essential elements of the offense.'" United States v. Bergrin, 650 F.3d 257, 264 (3d Cir. 2011)(citing United States v. Panarella, 277 F.3d 678, 685 (3d Cir. 2002)). A district court must find that "a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." Id., at 264-65 (citations omitted). Evidentiary questions such as credibility determinations and the weighing of proof should not occur at the motion to dismiss stage. United States v. DeLaurentis, 230 F.3d 659, 660-61 (3d Cir. 2000). "In considering a defense motion to dismiss an indictment, the district court accepts as true the factual allegations set forth in the indictment." United States v. Besmajian, 910 F.2d 1153, 1154 (3d Cir. 1990)(citation omitted). With this framework in mind, the Court turns now to Defendant's motions to dismiss the Indictment and the specific question of whether the Indictment sufficiently alleges violations of the Travel Act and Misprision of Felony.

### III. DISCUSSION

#### A.   Motion to Dismiss the Travel Act Counts of the Indictment

1. Alleged Conduct as a Predicate Offense under the Travel Act

The Indictment charges Defendant with violating the Travel Act by traveling in interstate channels of commerce with intent to solicit, accept and agree to accept cash payments as bribes, unlawful pursuant to N.J.S.A. 2C:27-2. In accordance with the

canon of constitutional avoidance, the Court will narrow the statutory language at issue so as to avoid confronting a statutory clash with the Constitution, in this case, the Tenth Amendment. See, e.g., Ashwander v. TVA, 297 U.S. 288, 346 (1936)(Brandeis, J., concurring)(articulating the principle of court avoidance in deciding constitutional issues where there are nonconstitutional grounds for a decision); United States v. Torres, 383 F.3d 92, 102 (3d Cir. 2004). Before assessing whether the conduct alleged in the Indictment may or may not constitute "unlawful activity" under New Jersey law, the Court will first assess whether the Travel Act contemplates such conduct as constituting a predicate act of bribery, generically understood, in violation of the Travel Act. Thus, the first issue before the Court is whether a candidate for public office's acceptance of a benefit in exchange for future official assistance, action and influence in municipal government matters is a proper Travel Act predicate offense as a generic matter. Since the Court finds that it is not, it need not address Defendant's Tenth Amendment claims regarding the unconstitutionality of the Travel Act as applied to Defendant. The Court also need not address Defendant's arguments regarding the Government's manufacture of jurisdiction under the Travel Act by introducing the element of interstate travel into Defendant's conduct since no Travel Act violation has been found to exist.

The Government contends that Defendant's conduct as alleged in the Indictment constituted the reception of a bribe unlawful under New Jersey's bribery statute, N.J.S.A. 2C:27-2. (Pl. First Opp'n Br., at 10, 13-17). That statute provides, in relevant part, as follows:

> A person is guilty of bribery if he directly or indirectly . . . solicits, accepts or agrees to accept from another: (a) any benefit as consideration for a decision, opinion, recommendation, vote or exercise of discretion of a public servant; or . . . (d) any benefit as consideration for the performance of official duties.

It is no defense to prosecution under this section that a person whom the actor sought to influence was not qualified to act in the desired way whether because he had not yet assumed office, or lacked jurisdiction, or for any other reason.

N.J.S.A. 2C:27-2. "Public servant" under the New Jersey Code of Criminal Justice is defined for the purposes of bribery and corruption as "any officer or employee of government, including legislators and judges, and any person participating as juror, advisor, consultant or otherwise, in performing a governmental function, but the term does not include witnesses." N.J.S.A. § 2C:27-1(g).

Defendant responds by making a series of arguments regarding the application of the Travel Act to the conduct alleged in the Indictment. First, Defendant claims that the actions attributable to Defendant did not violate the Travel Act since his conduct does not fall within the type of activity contemplated by the statute. (Def. First Mot., at 19). Specifically, Defendant contends that Defendant's conduct was not a "misuse of public office" as he was never elected to one. (Id., at 20-22). Second, Defendant asserts that Defendant's alleged conduct does not come within the proscriptions of the state bribery statute since the language of that statute: (1) presumes entitlement to office, which Defendant did not have; (2) does not proscribe future action requiring the satisfaction of a condition precedent; and (3) does not include candidates in its definition of "public servant." (Id. at 17-19). In order to assess the persuasiveness of Defendant's Travel Act claims, the Court will consider and review the plain language and intent of 18 U.S.C. § 1952 and case law defining and interpreting the generic definition of bribery in order to determine whether a candidate never elected to public office comes within the scope of the statute. The Court will address Defendant's further arguments regarding whether

Defendant's conduct may constitute "unlawful activity" in violation of the New Jersey

bribery statute in the following section, Section 2.


### a. The Plain Language and Intent of 18 U.S.C. § 1952

The Travel Act provides, in pertinent part, as follows:

(a) Whoever travels in interstate . . . commerce or uses . . . any facility in interstate . . . commerce, with intent to . . . promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform . . . an act [so] described . . . shall be fined under this title, imprisoned not more than 5 years, or both. . . .

(b) As used in this section (i) "unlawful activity" means . . . (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

18 U.S.C. § 1952(a)-(b). There are three basic elements required to establish a violation

of the Travel Act: (1) interstate travel or use of an interstate facility; (2) with intent to

promote, direct, or manage unlawful activity; and (3) a subsequent overt act in

furtherance of the unlawful activity. See United States v. Wander, 601 F.2d 1251 (3d

Cir. 1979). The Travel Act incorporates into federal law a given state's substantive law

of bribery and extortion crimes at issue in a particular prosecution, even if those laws

contain more expansive definitions of said crimes than those found at common law. See

United States v. Dansker, 537 F.2d 40, 47 (3d Cir. 1976).

The legislative history of the Travel Act reveals its primary purpose as a means to

aid States in the enforcement of their laws by enabling the targeting and prosecution of

participants in organized crime who avoided State prosecution by operating their criminal

enterprises from outside a State's boundaries. See Rewis v. United States, 401 U.S. 808,

811 (1971)(citing S. Rep. No. 644, 87th Cong., 1st Sess., 2-3 [1961]). The 1961 Senate

Report which endorsed the adoption of the Travel Act quoted from Attorney General

Robert Kennedy's submission letter as follows:

> Over the years an ever-increasing portion of our national resources has been
> diverted into illicit channels. Because many rackets are conducted by highly
> organized syndicates whose influence extends over State and National borders,
> the Federal Government should come to the aid of local law enforcement
> authorities in an effort to stem such activity.

United States v. Nardello, 393 U.S. 286, 291 (1969)(quoting S. Rep. No. 644, 87th Cong.,

1st Sess., 4 [1961]).

The courts have provided two general principles to guide their interpretation of

the Travel Act as it comes up against State law enforcement, each principle attempting to

ensure the balance between federal and State authority by establishing clearer parameters

to the limits of federal intrusion on the police powers of the States: (1) the Supreme Court

and the lower courts have circumscribed the breadth of the interstate nexus to require

more than mere criminal activity "at times patronized by persons from another state," cf.

Rewis, 401 U.S. at 812; and (2) the Supreme Court and the lower courts have evolved

standards to evaluate conduct alleged to be in violation of the Travel Act in terms of

unlawful conduct as defined and criminalized under State law.  See Perrin v. United

States, 444 U.S. 37, 50 (1979); Nardello, 393 U.S. at 295 (alleging a State violation

which falls within the generic category of a predicate offense is adequate to charge a

violation of the Travel Act).  Specifically, while it is clear that conduct charged as a

Travel Act violation—in this case, conduct allegedly involving bribery—must actually be

criminal under the laws of the relevant State, the specific label a State affixes to said

conduct is irrelevant as long as that conduct fits within traditional, generic notions of

bribery.  Id.  The Supreme Court has instructed that, when tensions emerge between how

a State may define a bribery offense and the way bribery is generically understood, courts must keep in mind the following: "Congress would certainly recognize that an expansive Travel Act would alter sensitive federal-state relationships, could overextend limited federal police resources, and might well produce situations in which the geographic origin of [those charged], a matter of happenstance, would transform relatively minor state offenses into federal felonies." Rewis, 401 U.S. at 812. Unlike RICO, which Congress specifically directed to be "liberally construed to effectuate its remedial purpose," see Forsythe, 560 F.2d at 1135-36, and the Hobbs Act, courts have instructed that the Travel Act be narrowly construed in the context of maintaining a delicate balance between the powers of the federal and State governments. See, e.g., Rewis, 401 U.S. at 811-12; United States v. Hathaway, 534 F.2d 386, 397-398 (1st Cir. 1976)("In contrast to the broad interpretation given to the Hobbs Act, the Supreme Court has indicated that the Travel Act is to be read in a narrower and more restricted fashion"); United States v. Nader, 542 F.3d 713, 721-22 (9th Cir. 2008)("The Travel Act establishes only concurrent federal jurisdiction over what are already state or local crimes. . . . The federal government cannot usurp state authority via the Travel Act because a state must first decide that the conduct at issue is illegal.").

The Third Circuit Court of Appeals also provides specific guidance as to how courts should assess state law predicate acts in the context of federal violations such as those proscribed under the Travel Act and RICO: "the test for determining whether the charged act fit into the generic category of the predicate offense [in this case, bribery] is whether the indictment charges a type of activity generally known or characterized in the

proscribed category." <u>United States v. Forsythe</u>, 560 F.2d 1127 1137 (3d Cir. 1977).[1]

While the Third Circuit has found that "conduct prohibited by the relevant New Jersey

bribery statute [the predecessor statute to N.J.S.A. § 2C:27-2] easily comes within the

generic term bribery," the relevant New Jersey bribery statute does not on its face

proscribe the exchange of a pecuniary benefit in consideration for future official

assistance, action and influence in municipal government matters if that exchange is done

by a candidate for public office who never gets elected. <u>See</u> <u>Dansker</u>, 537 F.2d at 47.

Therefore, in the case at bar, the Court must assess whether the kind of conduct alleged in

the Government's Indictment may be deemed to be encompassed within the generic

definition of bribery. In making the determination of whether the type of activity alleged

in the Indictment is "generally known or characterized" as bribery, the Court will look to:

(1) precedent defining the parameters of the generic definition of bribery; (2) any broader

proscription in New Jersey law of the conduct alleged in the Indictment not incorporated

into the specific predicate statute of N.J.S.A. § 2C:27-2; (3) precedent in New Jersey law

of enforcing its bribery statutes against candidates for public office who do not get

---

[1] While <u>Forsythe</u> considered the state law predicate and generic definition of bribery
under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Third
Circuit noted in that case that the legislative intent in drafting the RICO was to
"incorporate the Supreme Court's holding in <u>United States v. Nardello</u> [interpreting the
Travel Act and state law predicates], into the RICO statute." <u>Forsythe</u>, 560 F.2d at 1137.
The Travel Act does includes both state and federal law predicates of bribery under 18
U.S.C. § 1952(b)(2). Therefore, the Court will look to both federal and State definitions
and proscriptions of bribery, but since the alleged bribery in this case is explicitly stated
to be violative of New Jersey state law, the Court will only consider federal definitions of
bribery as they may accord with broader, common law understandings of bribery and an
analysis of what a generic definition of bribery may consist in. Specifically, while it is a
federal misdemeanor to solicit or accept a political contribution or money in
consideration for the promise of support or use of influence in obtaining for any person
any appointive office or place under the United States pursuant to 18 U.S.C. § 211, that
proscription is not dispositive for whether the conduct alleged in this Indictment may be
prosecuted under the Travel Act, as will be discussed more fully <u>supra</u>.

elected; and (4) the common law definition of bribery and other state statutes' inclusion of candidates for public office, subsequently elected or not, in the bribery statutes of other States.

## b. The Generic Definition of Bribery

### (i) Precedent Defining Bribery Generically

In determining whether the generic definition of bribery incorporates acts purportedly committed by a candidate for public office who was never elected to office, the Supreme Court's decisions in Nardello and Perrin are instructive, as are the cases which interpreted those decisions, specifically: (1) United States v. Dansker and United States v. Forsythe from the Third Circuit Court of Appeals; and (2) this Court's ruling and reasoning in United States v. Parlavecchio. These cases analyzed whether the alleged conduct in the respective indictments or for which defendants were convicted fell within the generic terms of "extortion" or "bribery" as used in the Travel Act. A brief overview of these cases is a proper starting point for this Court's analysis of the parameters of and sources for a generic definition of bribery.

In Nardello, defendants were charged with traveling in interstate commerce on three separate occasions to participate in a "shakedown" operation whereby individuals were allegedly lured into compromising situations involving homosexuality and were then threatened with exposure unless their silence was purchased. 393 U.S. at 287. The district court dismissed the indictments on the basis that, in Pennsylvania, while the offense of "blackmail" did not require a defendant to be a public official, the offense of "extortion" as titled in the criminal code required that the accused be a public official. Since the defendants were not public officials, the court reasoned, the indictment was

defective. On appeal, the Supreme Court was asked to consider whether the Travel Act's prohibition on travel in interstate commerce with intent to carry on "extortion" in violation of the laws of the State in which committed, applied to extortionate conduct classified as "blackmail" in the applicable State penal code. Id. The Supreme Court reversed the dismissal of the district court in finding that it did, and held as follows: (1) the provisions of the Travel Act were not limited to the common-law meaning of extortion as involving only corrupt acts by a public official; (2) the Travel Act applied to extortionate conduct classified as "blackmail" rather than "extortion" in the applicable State penal code, and the proper inquiry was not the manner in which a State classifies its criminal prohibitions, but rather whether the particular state involved prohibited the extortionate activity charged; and (3) the alleged conduct of the defendants in the case at bar fell within the generic term "extortion" as used in the Travel Act.

The Court based its holding on its assessment of: (1) the purposes of the Travel Act; and (2) the broader scope of prohibited extortionate conduct under the relevant State's laws. Regarding the purposes of the Travel Act, the Court found that it would violate said purposes to allow the same conduct to be a Travel Act offense in one State which incorporated the crime of blackmail into the crime of extortion under the title of "extortion," but not in other States where the two crimes are classified differently under different titles of their respective criminal codes. Id., at 294-95. Therefore, in looking to the broader scope of prohibited conduct in the State of Pennsylvania, the Court asserted that "the inquiry is not the manner in which States classify their criminal prohibitions but whether the particular State involved prohibits the extortionate activity charged." Id. Since Pennsylvania prohibited blackmail as done by private individuals and extortion as

done by public officials, the Court held that, "[a]lthough only private individuals are involved, the indictment encompasses a type of activity generally known as extortionate since money was to be obtained from the victim by virtue of fear and threats of exposure. . . . [We] thus conclude that the acts for which appellees have been indicted fall within the generic term extortion as used in the Travel Act." Id., at 296.

The Supreme Court expanded the definition of "bribery" under the Travel Act when it held in Perrin that the commercial bribery of private employees prohibited by Louisiana's commercial bribery statute was within the meaning of "bribery . . . in violation of the laws of the State in which committed" under the Travel Act. See generally, Perrin, 444 U.S. 37. In that case, Vincent Perrin and four codefendants had been convicted, inter alia, for Travel Act violations for their participation in an exchange of confidential geological exploration data stolen from a private employer in consideration for a percentage of profits in a new oil corporation created to exploit the stolen information. Id., at 37. In reaching its holdings in that case, the Court reviewed: (1) the purposes of the Travel Act; (2) the evolution of the common law definition of bribery from early common law through the present; and (3) state statutes addressing commercial bribery and bribery as committed by private individuals. Based on a detailed assessment of these three sources, the Court held that: (1) the generic meaning of bribery included bribes given and received by private individuals; and (2) "bribery" in the Travel Act encompassed "conduct in violation of state commercial bribery statutes" even if the narrower, common-law definition of bribery did not. Id., at 50.

The Third Circuit Court of Appeals considered the generic definition of bribery under RICO and the Travel Act in United States v. Dansker and United States v.

Forsythe. In <u>Dansker</u>, the Third Circuit reviewed, <u>inter alia</u>, defendant Nathan Serota's

Travel Act conviction predicated on New Jersey's predecessor bribery statute to the

N.J.S.A. § 2C:27-2. <u>See generally</u>, <u>Dansker</u>, 537 F.2d 40 (3d Cir. 1976). During the

period of the indictment, Serota was the vice-chairman of the Fort Lee Parking Authority

who resided in an expensive condominium apartment in Fort Lee near the site of his co-

defendants' proposed project to build a large shopping center. <u>Id.</u>, at 45. That site had

been zoned as non-commercial, and when Serota's co-defendants attempted to get a

zoning variance to permit construction, Serota publicly resisted by: paying for

advertisements in local newspapers to demonstrate his opposition to the project; helping

to form a citizens' group to bring lawsuits against the developers; organizing and

financing a slate of candidates for the Borough Council who made the proposed complex

a central issue in the upcoming elections; regularly attending hearings before the Board

of Adjustment; and actively participating in said hearings. <u>Id.</u> Ultimately, however,

Serota reached an agreement with the project developers whereby Serota would sell his

Fort Lee apartment, valued at $500,000, to the developers for $900,000, with an

additional $200,000 in cash on the date his apartment sold, in return for agreeing to cease

his opposition to the project and take active steps to secure its approval in a modified

form. <u>Id.</u>

While the Third Circuit found in <u>Dansker</u> that New Jersey's predecessor bribery

statute to the N.J.S.A. § 2C:27-2 "easily comes within the generic term bribery," it

reversed Serota's conviction on the ground that his conduct did not violate New Jersey

law. <u>Id.</u>, at 46. The Court generically defined bribery as "conduct which is intended, at

least by the alleged briber, as an assault on the integrity of a public office or an official

action. . . . The recipient must agree to utilize whatever apparent influence he might possess to somehow corrupt a public office or an official act." Id., at 48. The lines drawn in Dansker fall emphatically on the distinction between actual and apparent ability to influence a public office or an official act, not on the distinction between actual present and future ability to so influence. Specifically, the Court found that there were two requirements to establishing a violation of the New Jersey bribery statute, a statute which it found to fall within the generic understanding of bribery: "(a) that the alleged recipient, whether he be a public official or not, possessed at least the apparent ability to influence the particular public action involved; and (b) that he agreed to exert that influence in a manner which would undermine the integrity of that public action." Id., at 49 (emphasis added). With respect to the first requirement, the Court clarified why the evidence adduced was insufficient to sustain Serota's conviction: "although it is clear that Serota was a public official, the government failed to produce any evidence whatsoever indicating that he had any ability, actual or apparent, to influence official decisions concerning the project in his official capacity, or that the alleged bribers believed he could do so by virtue of his public office." Id., at 49-50 (emphasis added). In all references made to Serota's actual or apparent influence, the Court concentrates exclusively on the actual or apparent ability of the defendant at the moment of exchange: that the government would need to show that Serota "possessed" when receiving the bribe an apparent ability, or that he could "influence," through actual or apparent authority when the agreement was reached, an official act. It thus appears that the Court only contemplated within the generic definition of bribery the ways in which bribe givers and bribe receivers structurally situated themselves in relation to influence on public

action based on the actual or perceived authority a given bribe receiver had <u>at the time of receipt</u>, even if the exercise of the influence was to occur in the future or over time. After a thorough review of state case law interpreting the New Jersey bribery statute, the Court held that, since: (1) Serota was not paid monies <u>because of</u> his status as vice-chairman of the Fort Lee Parking Authority; and (2) the government did not establish that he was acting in a manner other than that permissible for any private citizen in attempting to influence official actions with respect to the project, Serota did not engage in conduct that would corrupt the activities of the Board of Adjustment. <u>Id.</u>, at 50-51.

The Third Circuit elaborated on the generic definition of bribery as a predicate offense to a federal crime in <u>Forsythe</u>. The specific question before the Court in that case was, <u>inter alia</u>, whether the district court had properly dismissed indictments against magistrate and constable defendants alleged to be involved in a broader scheme on the part of a bail bond agency to bribe magistrates, constables, court employees and law enforcement officials in return for referrals of defendants brought before the magistrates for the setting of bail. <u>See, generally</u>, <u>Forsythe</u>, 560 F.2d 1127. The Third Circuit reversed the district court's dismissal in part on the basis that several offenses alleged in the indictment fit within the generic category of bribery, specifically: (1) common law bribery; and (2) "practice or occupation of corrupt solicitation" as proscribed in separate provisions of the Pennsylvania criminal code from the bribery statute proper. <u>Id.</u>, at 1137-38. In so doing, the Third Circuit set forth the appropriate test, stated <u>infra</u>, regarding how a court must determine whether charged acts fit within the generic category of the predicate offense: "whether the indictment charges a type of activity

generally known or characterized in the proscribed category, namely, any act or threat involving bribery." Id., at 1137.

Finally, in United States v. Parlavecchio, this Court considered whether the indictments of two employees of the Board of Education sufficiently alleged bribery as a predicate offense under New Jersey law for violations of the Travel Act. See, generally, 903 F. Supp. 788 (D.N.J. 1995). In that case, the defendants were alleged to have purchased a building in Newark, New Jersey, which they then leased back to their employer, the Board of Education. Id., at 789. However, once the Board perceived a conflict of interest and insisted that defendants divest themselves of any interest in the building, the defendants purportedly arranged a scheme to conceal their interest and represented to the Board that they had relinquished said interest. Id., at 790. In fact, the indictments alleged, the defendants sold their shares in the building to relatives and took back a mortgage, thus continuing to receive rental payments that the Board continued to pay to them. Id. In finding that this alleged conduct was not sufficient to constitute generic bribery, this Court reviewed the requirements under Nardello, Perrin, Dansker and Forsythe, and held "the traditional popular definition of bribery does not encompass defendants' alleged conduct." Id., at 792. Specifically, the Court found that the language in Dansker could not be construed "to expand the generic definition of bribery to include conduct which never even contemplated a traditional briber/bribee relationship. Thus, although the conduct alleged by the government in this case may constitute an 'assault on the integrity of a public office' in a certain sense, this does not make it bribery under Dansker." Id., at 793. In so finding, the Court elaborated on the nature of the traditional donor/donee relationship as follows: "Although it is not a necessary element to the crime

that all the 'players' in an attempted bribe intend to participate, the verb 'to bribe' is a transitive one; a briber bribes, or attempts to bribe, or plans to bribe, <u>someone</u>. Defendants' alleged conduct simply does not fit this model . . . . The transaction at issue was between defendants and the Board, and it is impossible to assign the traditional roles of 'briber' and 'bribee' between them." <u>Id.</u>, at 792-93.

This Court, based on a review of the aforementioned case law, can therefore draw the following principles in its determination of whether the conduct alleged in the Indictment is of "a type of activity generally known or characterized in the proscribed category": (1) if the alleged conduct of a defendant falls within the generic term "bribery" as used in the Travel Act, it is a proper predicate offense for a Travel Act violation; (2) Congress did not limit the definition of "bribery" in the Travel Act to its common-law meaning of bribery (as involving, for example, only corrupt acts by a public official); (3) the proper inquiry by the Court is not the manner in which New Jersey <u>classifies</u> the criminal prohibition of bribery, but rather whether New Jersey prohibits the activity charged; (4) in engaging in that inquiry, the Court should look to the purposes of the Travel Act, the evolution of the common law definition of bribery, and State statutes addressing bribery; and (5) in looking at these sources, the ultimate test that the Court should employ is whether the conduct alleged is "generally known or characterized" as an act or threat involving bribery. Regarding the substantive content of the generic definition of bribery, the Court adduces the following generalizations from the case law: (1) the generic meaning of bribery includes bribes given and received by private individuals; (2) no distinction should be made between the actual and apparent ability a bribe receiver possessed at the time of exchange to influence official action or public

office; and (3) the generic definition of bribery must include a traditional donor/donee relationship.

The Court will now consider the specific definition of bribery as put forward by the Government in this case, and having already reviewed the purposes of the Travel Act, will consider whether, even if New Jersey law does not specifically classify candidates within the class of persons as to whom bribery is prohibited under N.J.S.A. § 2C:27-2, the activity charged in the Indictment is nevertheless prohibited under New Jersey statutes and common law. Thereafter, the Court will consider the inclusion of candidates in bribery prohibitions under common law more generally, reviewing the evolution of common law definitions of bribery and all State bribery statutes relating to candidates. As is explained below, the Court is convinced, after a thorough review of New Jersey law, common law, and State statutory definitions of bribery, that while the conduct alleged in the Indictment is reprehensible, it cannot be deemed "generally known or characterized" as conduct proscribed on the basis of bribery prohibitions generically conceived.

(ii) Proscribed Conduct of Unelected Candidates under New Jersey Law

Under Nardello and subsequent case law cited infra, a predicate act need not be classified under a State bribery statute as "bribery" for it to serve as a proper predicate act for a Travel Act violation. See, e.g. Nardello, 393 U.S. at 295 ("the inquiry is not the manner in which States classify their criminal prohibitions but whether the particular State involved prohibits the extortionate activity charged"). Therefore, if New Jersey law as a general matter prohibits the acceptance of a benefit in exchange for the performance of a favor in public office if such an acceptance were made by a candidate who never

actually attains public office, the Court could construe the conduct alleged in the Indictment as a proper predicate act under a broader understanding of bribery prohibited under New Jersey law. Since New Jersey law does not prohibit such conduct either under its bribery statute or under broader proscriptions of solicitation, however, the Court finds that Defendant's conduct as alleged does not violate the Travel Act.

As explained in fuller detail below, New Jersey's bribery statute does not on its face incorporate candidates unelected to office within the class to whom the statute applies.[2] While the Government does not specify under which provision of the statute Defendant's alleged conduct is proscribed—§ 2C:27-2(a) or 27-2(d)—the Court finds that neither includes candidates for public office who were never elected. Specifically, § 2C:27-2(a) prohibits the solicitation, acceptance or agreement to accept a benefit as consideration for a "decision, opinion, recommendation, vote or exercise of discretion of a public servant, party official or voter on any public issue or in any public election." N.J.S.A. § 2C:27-2(a). In N.J.S.A. § 2C:27-1(g), "public servant" is defined as "any officer or employee of government, including legislators and judges, and any person participating as juror, advisor, consultant or otherwise, in performing a governmental function, but the term does not include witnesses." N.J.S.A. § 2C:27-1(g). A candidate for public office, whether elected or not, is not included within that definition, and the definition is clear that it applies only to those officers or employees of government "in performing a governmental function" stated in the present progressive tense, indicating ongoing action happening at the time the stated offense occurs. Regarding the other

---

[2] See Section III.A.2 below where the Court finds, on alternative grounds, that Defendant's conduct does not constitute "unlawful activity" under New Jersey law based on the legislative history and statutory interpretation of N.J.S.A. 2C:27-2 as well as an evaluation of prosecutorial discretion enforcing said statute.

designations, Defendant is not charged as a party official or as a voter. Section 2C:27-2(d) prohibits the solicitation, acceptance or agreement to accept any benefit "as consideration for the performance of official duties," but since the conduct alleged in the Indictment did not reach Defendant's performance of official duties as Mayor of Jersey City, and since a candidate cannot perform official duties until elected, the Court does not find that this provision on its face applies to candidates that are never elected to public office.

Much of the Government's argument in interpreting the statute rests on the qualifying provision in the statute which states, "It is no defense to prosecution under this section that a person whom the actor sought to influence was not qualified to act in the desired way whether because he had not yet assumed office, or lacked jurisdiction, or for any other reason." N.J.S.A. § 2C:27-2; see Pl. First Opp'n Br., at 10-13. However, in strictly interpreting that language of the provision, it is clear to the Court that the language addresses two distinct parties: the person whom the actor sought to influence, and the actor himself. The "actor" is presumably the individual prosecuted under the statute—in this case, Defendant Louis Manzo—and substituting the named Defendant with the term "actor" in the provision indicates that the provision was intended to exclude any "not qualified to act" defenses as made by bribe givers, rather than bribe receivers. This accords with the legislative history of the statute, annotated commentary on the statute, case law in New Jersey and the model jury instructions drafted for the statute, as will be discussed in detail below. Absent a clear statement from the New Jersey legislature that candidates were within the designated class of persons to whom the statute applies, the Court is required under the rule of lenity to abstain from expanding

the scope of criminal liability. See, e.g., United States v. Edmonds, 80 F.3d 810, 821 (3d Cir. 1996)(stating that the rule of lenity "ensures there is fair warning of the boundaries of criminal conduct and that legislatures, not courts, define criminal liability")(internal citation and quotation marks omitted).

The Government neither cites to any case law in New Jersey which has interpreted the instant bribery statute or the predecessor statute as applying to unelected candidates, nor does it cite to other statutes in New Jersey which could be circumscribed within the generic definition of bribery that prohibit exchanges of benefits for political favors on the part of candidates. A thorough review of the New Jersey Code of Criminal Justice indicates no references to candidates for public office in the Code, including all provisions listed under Part 4, "Offenses Involving Public Administration Officials" (Bribery and Corruption, Perjury and Falsification to Authorities; Obstruction of Justice; Escapes; and Official Misconduct"), and provisions proscribing solicitation. Pursuant to N.J.S.A. § 19:34-25, it is a crime in New Jersey to engage in bribery as a candidate in order to purchase or induce certain behaviors of voters specifically, but that is not the conduct alleged in the instant Indictment, and no other provision in Title 19 covering elections proscribes the bribery of unelected candidates. Further, the Government cites to no precedent, and the Court can find none, in which prosecutors have exercised their discretion in enforcing New Jersey's bribery statutes by charging candidates for public office who were never elected with bribery-related offenses. Therefore, the Court finds that, even considering the broader set of prohibitions of conduct involving bribery under New Jersey law, bribery involving candidates for public office who promise future action

once elected, despite whether they in fact get elected or not, cannot serve as a predicate act in accordance with <u>Nardello</u> and its progeny.

(iii) <u>Common Law Definition of Bribery</u>

To determine the scope of the generic definition of bribery under common law, courts have examined the evolution of the term from early common law to the present, including reviewing definitions of bribery as set out in State bribery statutes. <u>See, e.g.</u>, <u>Nardello</u>, 393 U.S. at 293-94 (examining other States' extortion and blackmail statutes to determine the scope of the term's generic definition); <u>Perrin</u>, 444 U.S. at 43 (providing an overview of the crime of bribery from early common law to the present to determine whether the traditional definition of bribery includes commercial bribery). While acts involving private individuals such as commercial bribery and the bribery of witnesses have been circumscribed within the generic definition of bribery, the Court finds that, based on the evolution of the common law from its early history to current State bribery statutes, there is insufficient support for the contention that bribery of private individuals as candidates who do not get elected to public office constitutes bribery generically conceived.

Early common law limited the scope of bribery crimes to the corruption of judges, expanding the scope of the crime throughout the eighteenth and nineteenth centuries to "other person[s] concerned in the administration of justice," givers as well as receivers of bribes, and, finally, to the "corruption of any public official," voters and witnesses. <u>See</u> <u>Perrin</u>, 444 U.S. at 43 (<u>citing</u> 3 E. Coke, <u>Institutes</u>, * 144, * 147 (1628); 4 W. Blackstone, <u>Commentaries</u>, * 139-40 (1765); J. Stephen, <u>Digest of Criminal Law</u>, 85-87 (1877)). When the Travel Act was enacted, "federal and state statutes had extended the term

bribery well beyond its common-law meaning" to prohibit bribery of: agents or employees of common carriers under the Transportation Act of 1940 (49 U.S.C. § 1(17)(b); payments of television game show contestants under 1960 Amendments to the Communications Act (47 U.S.C. § 509(a)(2)); bank officers to influence their consideration of loans (18 U.S.C. § 215); contractors to secure subcontracts (41 U.S.C. § 51); and labor union officials (29 U.S.C. § 186). Perrin, 444 U.S. at 43.

The general federal bribery statute, enacted in 1948 and substantially amended a year after the Travel Act was enacted in 1962, can be construed as indicative of the common law evolution of bribery, and it does not extend the scope of bribery to candidates, but rather limits its application to anyone "being a public official[3] or person selected to be a public official,"[4] prohibiting said person from "corruptly demand[ing], seek[ing], receive[ing], accept[ing], or agree[ing] to receive or accept anything of value personally or for any other person or entity, in return for: (A) being influenced in his the performance of any official act; (B) being influenced to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or (C) being induced to do or omit to do any act in violation of the official duty of such official or person." 18 U.S.C. § 211(b)(2)(emphasis added); see also, 18 U.S.C. § 211(c)(1)(B)("Whoever otherwise than as provided by law for the

---

[3] "Public official" is defined in the statute as any "Member of Congress, Delegate or Resident Commissioner, either before or after such official has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government." 18 U.S.C. § 201(a)(1).

[4] "Person who has been selected to be a public official" is defined in the statute as "any person who has been nominated or appointed to be a public official, or has been officially informed that such person will be so nominated or appointed." 18 U.S.C. § 201(a)(2).

proper discharge of official duty, being a public official, former public official, or person selected to be a public official, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally for or because of any official act performed or to be performed by such official person, shall be find under this title or imprisoned for not more than two years, or both."). The common law offense of bribery in New Jersey at the time of the enactment of the Travel Act equally limited bribery to "the receiving or offering any undue reward by or to any person whatsoever, <u>in a public office,</u> in order to influence his behavior in office and incline him to act contrary to the known rules of honesty and integrity. . . . The common-law offense of bribery extends to any public officer. It covers all public officers: county prosecutors; chiefs of police; policemen; municipal aldermen; mayors; and members of a municipal governing body, among others." 1 Schlosser, <u>Criminal Laws of New Jersey</u>, § 25.1 (3 Ed. 1970)(emphasis added). "It is not necessary that the act requested be one which the official has authority to do. Sufficient it is if he <u>has</u> official power, ability or apparent ability to bring about or contribute to the desired end." Perkins, <u>Criminal Law</u>, 405-406 (1957)(<u>cited in</u> Final Report of the New Jersey Criminal Law Revision Commission ("Final Report") (1971), § 2C:27-2, Comment 1(a), at 263.

There are two federal provisions which run counter to the general circumscription in common law bribery to those vested with or attempting to influence those vested with public authority. One provision of Chapter 11 ("Bribery, Graft, and Conflicts of Interest") of Title 18, 18 U.S.C. § 211, generally proscribes the acceptance or receipt of a benefit in consideration for obtaining public office and may be read broadly enough to

prohibit the bribery of candidates: "Whoever solicits or receives, either as a political contribution, or for personal emolument, any money or thing of value, in consideration of the promise of support or use of influence in obtaining for any person any appointive office or place under the United States, shall be fined under this title or imprisoned not more than one year, or both." Federal election law more explicitly extends bribery crimes to candidates in 18 U.S.C. § 599, which states, "Whoever, being a candidate, directly or indirectly promises or pledges the appointment, or the use of his influence or support for the appointment of any person to any public of private position or employment, for the purpose of procuring support in his candidacy shall be fined under this title or imprisoned not more than one year, or both; and if the violation was willful, shall be fined under this title or imprisoned not more than two years, or both." 18 U.S.C. § 599.[5]

There are two reasons why the Court does not find the bribery prohibitions as articulated in 18 U.S.C. §§ 211 and 599 as dispositive in its determination of the scope of common law bribery in establishing a predicate act to a Travel Act violation. First, there is no case law demonstrating that these provisions were utilized in prosecutions to convict candidates who were never elected to public office of bribery crimes. A thorough search of case law involving 18 U.S.C. § 211 reveals no federal prosecution on record indicating that the statute was used to prosecute federal candidates for public office who were never elected. See, e.g. United States v. Fayette, 388 F.2d 728 (2nd Cir.

---

[5] If anything, these federal statutes may be construed to extend bribery prohibitions to candidates exclusively in the context of facts similar to those alleged in the Indictment concerning the Promotion Transaction and not to Defendant's alleged promise to expedite, prioritize or approve the Garfield Development project as presented by Mr. Dwek.

1968)(affirming the conviction of the State Chairman of the Vermont Democratic Party and candidate for Vermont State Senator, later elected to that office, for accepting a campaign contribution in consideration for appointment of a contributor to the office of Postmaster, a federal position). Section 599 has been cited in federal case law only three times: (1) this Court's own review of the sufficiency of the Government's Superseding Indictment in this case; (2) the Third Circuit's affirmance of that dismissal; and (3) a Ninth Circuit case which affirmed the dismissal of a civil action for breach of promise of employment in consideration for efforts to assist in a candidate's election for delegate of Guam, mentioning § 599 only in passing. See United States v. Manzo, 714 F. Supp. 2d 486, 498 (D.N.J. 2010)(stating that, "[w]hile certain conduct may violate more than one criminal statute, the Court is persuaded by Defendants' argument that this statute indicates that Congress contemplated candidate liability for trading such favors and determined that this conduct warranted lesser liability than that designated under the Hobbs Act"); United States v. Manzo, 636 F.3d 56, 65 n. 7 (3d Cir. 2011)(finding that, although § 599 "only applies to federal candidates, not state candidates, it reveals Congress's recognition that candidates should be treated as a separate class under the law"); De Vera v. Blaz, 851 F.2d 294 (9th Cir. 1988).

Second, Rewis and subsequent case law instruct that, in examining state-law predicate offenses to violations of the Travel Act, the Court must keep in mind that "an expansive Travel Act would alter sensitive federal-state relationships." See Rewis, 401 U.S., at 812. Thus, even if federal criminal law incorporates the bribery of candidates in the context of government appointments, that is not the end of the matter in determining a broader, common law understanding of bribery, and a general overview of state bribery

statutes is critical in determining whether the type of activity charged is generally known or characterized as bribery.

A thorough review of all fifty State bribery statutes reveals that only twelve out of fifty States, not including New Jersey, incorporate candidates in their general prohibitions of bribery: Delaware, Florida, Kansas, Maine, Mississippi, New Hampshire, North Carolina, Ohio, Texas, Vermont, Virginia, and West Virginia.[6] All other States very

---

[6] See 11 Del. C. §§ 1203, 1206, 1208, 1209 (including in its definition of "public servant" to whom the state bribery statute applies those "person[s] who are candidates for office or who have been elected to office but who have not yet assumed office"); Fla. Sta. § 838.014-016 (including in its definition of "public servant" to whom the state bribery statute applies "a candidate for election or appointment to any of the positions listed in this subsection [on Bribery; Misuse of Public Office], or an individual who has been elected to, but has yet to officially assume the responsibilities of, public office"); Kan. Stat. Ann. §§ 21-3110, 21-3901 (prohibiting "the act of a person who is a public officer, candidate for public office or public employee, in requesting, receiving or agreeing to receive, directly or indirectly, any benefit, reward or consideration given with intent that the person will be [] influenced [with respect to the performance of the person's powers or duties as a public officer or employee]"); Me. Rev. Stat. Ann. Tit. 17-A §§ 2, 601, 602 (stating that the state bribery statute applies to candidates for electoral office "upon his public announcement of his candidacy"); Miss. Code Ann. §§ 97-11-11, 97-11-13 (prohibiting any person while holding public office "or after he has become a candidate or applicant for the same" from, inter alia, accepting any gifts, offers or promises in consideration for influence); N.H. Rev. Stat. Ann. §§ 640:1-2 (proscribing bribery of candidates for electoral office "upon his public announcement of his candidacy"); N.C. Gen. Stat. § 14-217 (including any person "who has filed a notice of candidacy for or been nominated for such office, under the laws of this State" in its prohibition of bribery of officials); Ohio Rev. Code Ann. §§ 2921.01-02 (including in its definition of "public official" to whom the state bribery statute applies "a person who is a candidate for public office, whether or not the person is elected or appointed to the office for which the person is a candidate"); Tex. Penal Code §§ 1.07, 36.02 (including in its definition of "public servant" to whom the state bribery statute applies "a candidate for nomination or election to public office" and in its definition of benefits exchanged "any benefit that is a political contribution . . . or that is an expenditure made and reported . . . if the benefit was offered, conferred, solicited, accepted, or agreed to pursuant to an express agreement to take or withhold a specific exercise of official discretion if such exercise of official discretion would not have been taken or withheld but for the benefit"); 13 V.S.A. § 1102 (prohibiting bribe receipt by "a person who is a candidate or applicant for an executive, legislative or judicial office"); Va. Code Ann. §§ 18.2-439, 18.2-446, 18.2-447, 18.2-448 (prohibiting bribe receipt by any candidate for executive office, and the "word candidate

clearly indicate that the bribery proscribed in their bribery statutes is that of a bribe giver

or bribe receiver <u>while</u> that individual is a public servant or public official.  Further, the

majority of State statutes do not include candidates who were never elected to public

office in their respective definitions of "public servant" or "public official," emphasizing

the prohibition as applied to those already vested with the sovereign power of

government.[7]  Finally, the majority of state statutes generally distinguish between bribe

---

as used in this section . . . shall mean anyone who has filed his candidacy with the
appropriate electoral official or who is a candidate as defined in [this statute]");  W. Va.
Code §§ 61-5!-2, 61-5A-3, 61-5A-7, 61-5A-8 (including in its definition of "public
servant" to whom the state bribery statute applies "any candidate for election to any state,
county or local public office," and stating that it "shall be no defense to any prosecution
under the provisions of [this] section . . . that a person whom the actor sought to influence
. . . was not qualified to act in the desired way, whether because he was a candidate for
office, or had not yet assumed office or his position of employment, or lacked authority
or jurisdiction, or the matter was not yet before him, or for any other reason was not
qualified to act in the desired way").

[7] Alabama: Code of Ala. §§ 13A-10-60(b)(3), 13A-10-61, 13A-10-63 ("a person commits
the crime of bribery, if, <u>while</u> a public servant," he gives or receives a bribe, and not
naming candidates in its definition of "public servant")(emphasis added); Alaska: Alaska
Stat. §§ 11.81.900(54), 11.56.130, 11.56.100, 11.56.110 ("a public servant commits the
crime of receiving a bribe" if he accepts a benefit on agreement that his decision as a
public servant will be influenced, and not naming candidates in its definition of "public
servant" unless the person is "nominated, elected, appointed, employed, or designated to
act in a capacity . . . , but who does not occupy the position"); Arizona: Ariz. Rev. Stat.
§§ 13-105(38), 13-2601, 13-2602, 13-2063 ("a person commits bribery of a public
servant or party officer if . . . <u>while</u> a public servant or party officer," he gives or receives
a bribe, and not naming candidates in its definition of "public servant" or "party officer"
unless "elected, appointed, employed or designated to become a public servant although
not yet occupying that position")(emphasis added); Arkansas: A.C.A. §§ 5-1-102(16), 5-
52-104, 5-52-105, 5-52-107 (a person commits bribery or abuse of office if, "<u>being</u> a
public servant," they fulfill the requisite bribery elements, and including as public
servants those persons "elected, appointed, or otherwise designated to become a public
servant although not yet occupying that position")(emphasis added); California: Cal. Pen.
Code §§ 7, 68, 70, 74; Cal. Elec. Code § 18523 (dividing corruption-based crimes by
branch of government, and prohibiting bribe receipt by "[e]very executive or ministerial
officer, employee, or appointee of the State of California"); Colorado: C.R.S. §§ 18-8-
301, 18-8-304, 18-8-305 ("a person commits the crime of bribery, if . . . [w]hile a public
servant," he gives or receives a bribe, and not naming candidates in its definition of

"public servant" only those who "have been elected, appointed, or designated to become a public servant although not yet occupying that position")(emphasis added); Connecticut: Conn. Gen. Stat. §§ 53a-146(3), 53a-147, 53a-148 (prohibiting bribe receipt by "public servant," "elected or appointed" and reiterating in the crime definition that the person need be a "public servant or a person selected to be a public servant"); Georgia: O.C.G.A. § 16-10-2 (prohibiting bribe receipt by a "public official, elected or appointed"); Hawaii: H.R.S. §§ 710-1000(15), 710-1040 ("a person commits the offense of bribery if . . . <u>while</u> . . . [or] <u>as</u> a public servant," he gives or receives a bribe, and not naming candidates in its definition of "public servant" unless "elected, appointed, or designated to become a public servant although not yet occupying that position")(emphasis added); Idaho: Idaho Code Ann. §§ 18-1351(8), 18-1352 ("[a] person is guilty of bribery" if he accepts a pecuniary benefit as consideration for a favor "<u>as</u> a public servant," and not naming candidates in its definition of "public servant")(emphasis added); Illinois: 720 I.L.C.S. 5/2-17, 5/2-18, 5/33-1 (only proscribing bribery receipt as by public officers defined as "a person who is elected to office pursuant to statute, or who is appointed to an office which is established, and the qualifications and duties of which or prescribed, by statute, to discharge a public duty for the State or any of its political subdivisions"); Indiana: Ind. Code Ann. §§ 35-41-1-24, 35-44-1-1 (defining a "public servant" subject to the bribery statute as a person "elected or appointed to office" and proscribing bribe receipt by a person who, "<u>being</u> a public servant, solicits, accepts or agrees to accept, either before or after the person becomes appointed, elected, or qualified, any property, except property the person is authorized by law to accept, with intent to control the performance of an act related to the person's employment or function as a public servant")(emphasis added); Iowa: Iowa Code § 722.2 (prohibiting bribe receipt by "[a] person who is serving or has been elected, selected, appointed, employed, or otherwise engaged to serve in a public capacity, including a public officer or employee"); Kentucky: K.R.S. §§ 521.010(1), 521.020, 432.350 ("a person is guilty of bribery of a public servant when, . . . [<u>w</u>]hile a public servant," he gives or receives a bribe, and not naming candidates in its definition of "public servant" except those "elected, appointed, or designated to become a public servant although not yet occupying that position")(emphasis added); Louisiana: La. R. S. §§ 14:2(A)(9), 14-118 (proscribing bribe receipt of "[a]ny person who has been elected or appointed to public office, whether or not said person has assumed the title or duties of such office"); Massachusetts: A.L.M. G.L. Ch. 268A, §§ 1(g), 2 (proscribing corrupt acceptance of gifts by "person[s] selected to be" a state, county or municipal employee, and not naming candidates in its definition of "municipal employee"); Michigan: M.C.L.S. §§ 750.217c(d), 750.117, 750.118 (proscribing acceptance of a bribe by any "executive, legislative or judicial officer," defining said officer as "a person who is elected or appointed"); Minnesota: Minn. Stat. §§ 609.415(1), 609.42 (prohibiting receipt of a bribe while "<u>being</u> a public officer or employee," and defining "public officer" as a "person who has been elected, appointed, or otherwise designated as a public officer or public employee")(emphasis added); Missouri: R.S. Mo. §§ 556.061(23), 576.010, 576.020 (proscribing bribe receipt by public servants, and defining "public servant" as any person "appointed to a position with any government of this state, or any person elected to a position with any government of this state"); Montana: Mont. Code Ann. §§ 45-2-101(61), 45-7-101 (proscribing bribe

receipt by public servants and defining "public servant" as including "one who has been elected or designated to become a public servant"); Nebraska: Neb. Rev. Stat. §§ 28-916.01(6), 28-917 ("[a] person commits bribery if . . . while a public servant," he solicits, accepts or agrees to accept a bribe, and not naming candidates in its definition of "public servant")(emphasis added); Nevada: Nev. Rev. Stat. §§ 193.019, 197.030, 197.040 (proscribing bribe receipt by any "executive or administrative officer or person elected or appointed to an executive administrative office," and not naming candidates in its definition of "public officer"); New Mexico: N. M. Stat. §§ 30-1-12(I)-(J), 30-24-2 (proscribing bribe receipt by public officers or employees, and defining "public officer" as "any elected or appointed officer of the state or any of its political subdivisions"); New York: New York Penal Law §§ 10.00(15), 200.10, 200.11, 200.12, 200.15 (proscribing bribe receipt by public servants, defining those to include "a person who has been elected or designated to become a public servant"); North Dakota: N.D. Cent. Code §§ 12.1-01-04(27), 12.1-12.01 (prohibiting bribe receipt by public servants, and defining "public servant" as "any officer or employee of government . . . elected or appointed, and any person participating in the performance of a governmental function"); Oklahoma: 21 Okl. St. §§ 97, 382 (prohibiting bribe receipt by any "executive, legislative, county, municipal, judicial, or other public officer, or any employee of the State of Oklahoma or any political subdivision thereof, . . . or any person assuming to act as such officer"); Oregon: O.R.S. §§ 162.005(2), 162.025, 162.035 (proscribing receipt of bribes by public servants, and defining said as an "elected official, appointed official, employee or agent" or as a "person nominated, elected or appointed to become a public servant, although not yet occupying the position"); Pennsylvania: 18 Pa. C. S. §§ 4501, 4701 (prohibiting bribe receipt by public servants without naming candidates in its definition of "public servant"); Rhode Island: R. I. Gen. Laws § 11-7-3 (prohibiting solicitation or acceptance of bribes by public officials for any act in which he or she is an official)(emphasis added); South Carolina: S.C. Code Ann. §§ 8-1-10, 16-8-220 (prohibiting acceptance of bribes by public officers, and not naming candidates in its definition of "public officer"); South Dakota: S.D. Codified Laws §§ 22-1-2(37), 22-12A-2, 22-12A-7 (prohibiting solicitation or acceptance of bribes by public employees or public officers, defining "public officer" as "any person who holds a position in the state government or in any of its political subdivisions, by election or appointment, for a definite period, whose duties are fixed by law, and who is invested with some portion of the sovereign functions of government")(emphasis added); Tennessee: Ten. Code Ann. §§ 29-11-106(30), 39-16-102, 39-16-106 ("[a] person commits a[] [bribery] offense who . . . [w]hile a public servant, solicits, accepts or agrees to accept" a bribe, and defining "public servant" to include "[a]ny person elected, appointed or designated to become a public servant, although not yet occupying that position")(emphasis added); Utah: Utah Code Ann. §§ 76-8-101(1) and (5), 76-8-102, 76-8-105, 76-8-106 (proscribing receipt or solicitation of bribes by public servants, and stating that, "[a] person is considered a public servant upon his election, appointment, or other designation as such, although he may not yet officially occupy that position"); Washington: Was. Rev. Code §§ 9A.04.110(13) and (23), 9A.68.010, 9A.68.040, 9A.68.050 ("[a] person is guilty of bribery if . . . [b]eing a public servant, he or she requests, accepts, or agrees to accept" a bribe, and defining "public servant" as "any person other than a witness who presently occupies or position of or has

givers and bribe receivers, often in different statutory provisions, with some making clear

that any defense not available based on an absence of qualification to act is isolated to

bribe givers rather than bribe receivers.[8] The Model Penal Code's model bribery

provision—§ 240.1, "Bribery in Official and Political Matters"—also does not name

candidates either in the language of the provision or in the definition of "public servant,"

and the language of the provision has served as a model for many State statutes.[9]

---

been elected, appointed, or designated to become any officer or employee of
government")(emphasis added); Wisconsin: Wis. Stat. §§ 939.22(30), 946.10, 946.18
(prohibiting bribery of public officers and employees, and defining said officers as "any
person appointed or elected according to law to discharge a public duty for the state or
one of its subordinate governmental units," "whether legally constituted or exercising
powers as if legally constituted"); Wyoming: Wyo. Stat. Ann. §§ 6-5-101(v), 6-5-102, 6-
5-116 ("[a] person commits bribery, if . . . [w]hile a public servant, he solicits, accepts or
agrees to accept" a bribe, and not naming candidates in its definition of "public officer"
or "public servant")(emphasis added).

[8] See, e.g., Alaska Stat. § 11.56.100 as opposed to § 11.56.110.

[9] MPC § 240.1 states, "A person is guilty of bribery . . . if he . . . solicits, accepts or
agrees to accept from another: (1) any pecuniary benefit as consideration for the
recipient's decision, opinion, recommendation, vote or other exercise of discretion as a
public servant, party official or voter; or . . . (3) any benefit as consideration for a
violation of a known legal duty as public servant or party official. It is no defense to
prosecution under this section that a person whom the actor sought to influence was not
qualified to act in the desired way whether because he had not yet assumed office, or
lacked jurisdiction, or for any other reason." "Public servant" is defined under MPC §
240.0(7) as "any officer or employee of government, including legislators and judges,
and any person participating as juror, advisor, consultant or otherwise, in performing a
governmental function; but the term does not include witnesses." Commentary on the
Model Penal Code addresses the inclusion of candidates within the scope of § 240.1 in
stating as follows: "The Model Penal Code contains no special provision relating to
campaign contributions. The result is that a person may be convicted of bribery for
offering a campaign contribution, and a candidate may be guilty of bribery for receiving
such a contribution, if the other requirements of the offense are met." MPC § 240.1
Comment 5(b) (Official Draft and Revised Comments, 1980), at 27 (emphasis added).
Those requirements include that the individual receiving or agreeing to accept the bribe is
a "public servant or other covered individual" within the definition of the § 240.0. Id.,
Comment 1, at 5. Further, regarding the availability of the "not qualified to act defense,"
the Comments clarify that "[t]he language of preclusion may seem to be worded so that

The decision not to explicitly include candidates in general State bribery statutes involving public officials involves at least two discernable public policy concerns. First, proscribing as bribes monetary contributions to candidates, without clear line-drawing, may infringe on the First Amendment rights of both campaign donors and candidates. See, e.g. Citizens United v. FEC, 130 S.Ct. 876, 892 ("political speech . . . is central to the meaning and purpose of the First Amendment"); Morse v. Frederick, 551 U.S. 393, 403 (2007)("Political speech, of course, is 'at the core of what the First Amendment is designed to protect.'")(citing Virginia v. Black, 538 U.S. 343, 365 (2003)). State statutes that do incorporate candidates in their general prohibitions of bribery often address and clearly delimit the scope of their application to candidates so as to preserve the delicate balance between First Amendment rights and the public interest in preserving the integrity of the democratic process in such an incorporation.[10] Second, it is not clear that, unless a candidate for public office who is the recipient of a bribe actually takes office,

---

literally it would apply only where the defendant was the person who sought to influence the official conduct of another. It is intended, however, to apply with equal force where the defendant is a public official who solicits or accepts a bribe." Id., Comment 9, at 37 (emphasis added).

[10] See, e.g., Me. Rev. Stat. Ann. Tit. 17-A § 601 ("Nothing in this chapter shall be construed to prohibit the giving or receiving of campaign contributions made for the purpose of defraying the costs of a political campaign. No person shall be convicted of an offense solely on the evidence that a campaign contribution was made, and that an appointment or nomination was subsequently made by the person to whose campaign or political party the contribution was made."); N.H. Rev. Stat. Ann. § 640:1 ("Nothing in this chapter shall be construed to prohibit the giving or receiving of campaign contributions made for the purpose of defraying the costs of a political campaign, or the giving or receiving of any other thing exempt from the prohibitions on gifts . . . . No person shall be convicted of an offense solely on the evidence that a campaign contribution, or any other thing exempt from the prohibitions no gifts . . . was made to a public official, and that a vote, an appointment, or a nomination was subsequently made by the person to whose campaign of political party the contribution was made or who received the thing exempt from the prohibition on gifts. . . .").

the harm committed is not delimited to a private harm more in the nature of fraud as opposed to a public harm which warrants criminal sanction. See, e.g., MPC § 240.1 Comment 9 n. 127 ("where a purported bribe giver offers a bribe to one who is not a public servant, the preclusion under discussion permits a conviction of bribery. This result is defensible on the ground that the bribe giver is expressing a willingness to corrupt government, whereas the purported bribe receiver in such a case is not corrupting government but engaging in a species of fraud").

Therefore, while bribe receipt by a candidate who is never elected to public office may indeed be deeply objectionable, without a clear statement of its criminal nature under state law or a clear consensus regarding its circumscription within traditional notions of bribery, the Court does not find that such conduct fits within the generic definition of bribery. Assuming arguendo that the conduct alleged in the Indictment does come within the traditional definition of bribery, however, the Court still finds that it does not constitute "unlawful activity" under New Jersey law.

## 2. Alleged Conduct as "Unlawful Activity" under New Jersey Bribery Statute[11]

Defendant contends that, even accepting all of the Government's allegations as true, the alleged conduct as stated in the Indictment would not violate N.J.S.A. § 2C:27-2

---

[11] The Court disagrees with the Government that law of the case doctrine requires that the Court adhere to its earlier finding during the March 23, 2010 hearing that the New Jersey statute may apply to candidates. (Tr. of March 23, 2010 Hearing, at 48:18-48:23)("the plain reading of the statute is that it encompasses prosecutions where the person whom the action was sought to influence was not yet qualified or to act in a desired way for any reason, even lack of jurisdiction, so I think it certainly would bring into play a candidate for public office as it is here." That statement indicated that a candidate may or may not come within the definition of the bribery statute if read within the lack of defense provision which, upon closer scrutiny and detailed inquiry into the legislative and prosecutorial history of the statute and its use as well as New Jersey case law, are found insufficient to support an interpretation of the statute which incorporates candidates never elected to public office.

as Defendant, a candidate for public office, was not subject to the proscriptions of the statute, and therefore the alleged conduct would not violate the Travel Act. (Def. First Mot., at 17-18). The Government makes two arguments in favor of a broad interpretation of the New Jersey statute: (1) the statute removes defenses available to bribe recipients that said recipient was "not yet qualified to act," "had not yet assumed office, or lacked jurisdiction, or for any other reason," and that provision is broad enough to encompass candidates not yet elected; and (2) "public servant" should be construed broadly to include candidates because its purpose was to "to reach broadly those whose influence could be affected." (Pl. First Opp'n Br., at 11-12). The Government does not specify whether Defendant's conduct is proscribed under § 2C:27-2(a) or (d), but argues as further evidence of the breadth of the provision that subsection (d) proscribes bribery receipt by a "person . . . if he directly or indirectly . . . solicits, accepts or agrees to accept from another any benefit as consideration for the performance of official duties." Id. (emphasis in original). The Court finds that, after assessing the legislative and prosecutorial history of the statute as well as analyzing the language and interpretation of the statute in New Jersey case law, the statute cannot be interpreted to prohibit the conduct of candidates never elected to public office as alleged in the Government's Indictment.

### a. Legislative History

As cited infra, the New Jersey statute states in relevant part follows:

A person is guilty of bribery if he directly or indirectly . . . solicits, accepts or agrees to accept from another: (a) any benefit as consideration for a decision, opinion, recommendation, vote or exercise of discretion of a public servant; or . . . (d) any benefit as consideration for the performance of official duties.

It is no defense to prosecution under this section that a person whom the actor sought to influence was not qualified to act in the desired way whether because he had not yet assumed office, or lacked jurisdiction, or for any other reason.

N.J.S.A. 2C:27-2. Counts 1 and 2 allege that Defendant, on February 23, 2009 and March 4, 2009, entered and utilized the channels of interstate commerce in traveling from New Jersey to New York to solicit, accept, or agree to accept pecuniary benefits culminating in the amount of $27,500 cash in exchange for a promise to promote Mr. Khalil within the Jersey City Department of Health and Human Services and to assist Mr. Dwek in development-related matters relating to his Garfield Development.

While the New Jersey bribery statute has a limited record regarding its legislative history, the Court will look to its predecessor statute, amendments made to said statute and its sources in the Model Penal Code to illuminate congressional intent. New Jersey's prior bribery statute, like many other state statutes, divided bribery prohibitions based on the function of public officials. The broadest provision which was at issue in the line of cases cited by the Government and Defendant—State v. Sherwin, State v. Ferro, State v. Schenkolewski, and United States v. Dansker—was N.J.S.A. 2A:93-6, prohibiting the "Giving or accepting bribes in connection with government work, service, etc.," and stated in relevant part:

> Any person who directly or indirectly . . . receives, offers to . . . receive, or promises to . . . receive any money, real estate, service or thing of value as a bribe, present or reward to obtain, secure or procure any work, service, license, permission, approval or disapproval, or any other act or thing connected with or appertaining to any office or department of the government of the state or of any county, municipality or other political subdivision thereof, or of any public authority, is guilty of a misdemeanor.

N.J.S.A. § 2A:93-6 (emphasis added). The statute is silent as to its scope or application to candidates, whether elected or not. New Jersey courts that have examined the statute

in the context of its legislative history have noted: (1) that records were not left regarding

a legislative statement or history to guide a court's interpretation of the congressional

intent of its drafters; and (2) the statute was a culmination of efforts to incorporate public

officials and those claiming the capacity or power to influence existing public officials.

For example, in State v . Ferro, the Appellate Division engaged in an exhaustive search of

the legislative history of N.J.S.A. 93-6 and found that its "research has disclosed no

legislative statement or history which might assist us in arriving at the legislative intent

[of N.J.S.A. 2A:93-6]. Consequently, we are left to apply customary rules of

construction of legislative acts." 128 N.J. Super. 353, 357 (App. Div. 1974). However,

the court did review the drafting of the relevant provision in the context of New Jersey's

first bribery statutes in 1898, their recodification in the revision of 1937, and the final

codification at that time in the 1952 enactment of Title 2A as it then stood. Id., at 359-

361. The court found that

> Later legislatures . . . recognized a social interest in keeping certain types of
> nonofficial action free from corrupting influences. This interest extended not only
> to corruption in relation to public office, but also to corruption of other
> individuals in positions of trust. . . . However, . . . further expansion of the
> common law was necessary to reach those forms of bribery which did not involve
> governmental action. Thus, later legislatures enacted statutes which penalized
> bribery of a labor representative . . . , bribery of a foreman . . . , bribery of and
> receipt of a bribe by a participant in a sporting contest . . . , and bribery of a
> referee in a sporting contest . . . .

Id., at 360. The court continued its assessment of the broadening application of the

bribery statute in stating that, "[t]he enactment of N.J.S.A. 2A:93-6 can thus fairly be

considered to have completed a legislative scheme which has become apparent over the

years, i.e., to penalize those in an apparent position of trust who would utilize their

position or relationship to influence some governmental activity of [a] public official. It

is entirely consistent with that scheme for the Legislature to seek to reach the activities of would-be as well as actual brokers of corruption along with officials and others implicated in corrupt arrangements." Id., at 361 (emphasis added).

Such an assessment by a New Jersey court of the legislative history of the predecessor statute to the one at issue is clarifying to the extent that it simultaneously demonstrates the broadening scope of the statute both within and outside the realm of official conduct while at the same time narrowing the focus of public harm within the world of public action to those with real or apparent power to influence existing public officials. The revised scheme enacted in Title 2A in 1952 made clear that bribery was to be prohibited in the context of public action and with regard to those in positions of public trust, including judges and magistrates (§ 2A:93-1), legislators (§ 2A:93-2), voting public officials (§ 2A:-93-4), labor representatives (§ 2A:93-7), jury foremen (§ 2A:93-8); witnesses (§ 2A:93-9), participants in sporting contests (§§ 2A:93-10 to 93-12) and officials in sporting contests (§§ 2A:93-13 to 93-14). These demarcations did not set out candidates as a special category, nor were any statements made regarding whether or not they inhabited "positions of trust." However, the legislative history as interpreted in Ferro indicates that, even while the scope of the bribery provisions expanded beyond the world of public officials, bribery in relation to public conduct always involved existing public officials even if those around them engaging in corrupt activity were "would-be" or "actual brokers of corruption." Therefore, if any distinction can be made in understanding the scope of the statute's application to those with actual and those with apparent authority, the distinction is one of "actual" versus "feigned" influence over public officials rather than "actual" versus "future" influence, where power brokers in an

existing, synchronic plane may be guilty of corruption based on who they structurally situate themselves in relation to, whether or not they have the power to enforce their corrupt intent, rather than a hypothetical, speculative field of power relations where the act of betting on potential routes of influence is deemed corrupt activity.

This extrapolation from the limited legislative history available and its interpretation by New Jersey courts is equally applicable to the extant bribery statute, N.J.S.A. § 2C:27-2. First, the New Jersey statutory scheme preserved its expansion into non-official conduct by maintaining its prohibitions of witness bribery (see, generally §§ 2C:28-1 to 28-8) and establishing a broader category of prohibited commercial bribery which incorporated the bribery of labor officials, referees and others (see § 2C:21-10), even as it did not explicitly expand the application of the bribery statute relating to public officials to candidates for public office who do not get elected. Second, the relevant sources listed for the statute in the New Jersey Criminal Law Revision Commission Final Report were N.J.S.A. §§ 2A:93-1, 93-2, 93-3, 93-4, and 93-6 as well as the Model Penal Code § 240.1. See L. 1978, Ch. 95, at 105. As stated infra, the Model Penal Code does not appear to contemplate the inclusion of candidate never elected to public office within its general bribery proscription in § 240.1.[12]

### b. Strict Statutory Interpretation

The scope of the application of the New Jersey bribery statute to candidates for public office is not readily apparent from the face of the statute, and penal statutes will be strictly construed in accordance with the rule of lenity. See Smith v. United States, 508 U.S. 223, 239 (1993)(rule of lenity "is reserved for cases where, after seizing every thing

---

[12] See Section III.A.1.b.iii of this Opinion.

from which aid can be derived, the Court is left with an ambiguous statute.")(quoting United States v. Bass, 404 U.S. 336, 347 (1971)(quoting United States v. Fisher, 6 U.S. (2 Cranch) 358, 386 (1805))).  However, the statute provides significant guidance regarding its applicability to Defendant's conduct as alleged in the Indictment.

The Government indicates but does not specify that Defendant's conduct could be deemed "unlawful activity" under § 2C:27-2(a) or (d).  (Pl. First Opp'n Br., at 13). Subsection (a) does not refer to candidates on its face.  Under that subsection, a person is guilty of bribery if they solicit, accept or agree to accept from another "any benefit as consideration for a decision, opinion, recommendation, vote or exercise of discretion of a public servant, party official, or voter on any public issue or in any public election." N.J.S.A. § 2C:27-2(a).  Therefore, any alleged conduct within the proscription of the statute must involve at least one public servant, party official or voter, either directly or indirectly.  While the Government does not give the Penal Code's definition of "public servant," urging a broad understanding of those terms, the Penal Code does in fact define "public servant" clearly, and the Court declines to expand the scope of that definition: "any officer or employee of government, including legislators and judges, and any person participating as juror, advisor, consultant or otherwise, in performing a governmental function, but the term does not include witnesses." N.J.S.A. § 2C:27-1(g).  Defendant, as a candidate for mayor in Jersey City who was never elected, does not fit within that definition as stated in the Penal Code, and the conduct alleged in the Indictment does not include any allegations regarding Defendant's receipt of a bribe as a party official or as a voter.  Subsection (d) is more broad in prohibiting a person for soliciting, accepting or agreeing to accept from another "[a]ny benefit as consideration for the performance of

official duties." N.J.S.A. § 2C:27-2(d).  However, Defendant never had any official

duties to perform as he was never elected as a public official.  Given the rule of strict

construction applicable to provisions of the Penal Code, it is too speculative to interpret

the provision as stating "as consideration for the performance of official duties <u>to</u>

<u>candidates following election or nomination to public office, whether likely or unlikely,</u>

<u>at any future point in time</u>."  Further, the Final Report of the New Jersey Criminal Law

Revision Commission states under its general commentary on § 2C:27-2 regarding

"Classes of Persons as to Whom Bribery is Prohibited," that "[t]he Code by virtue of the

definition of 'public servant' in Section 2C:27-1g covers not only 'officials' but all public

employees.  In this regard, it is like modern legislation in any other states but unlike our

offense, both statutory and common law, which extends to 'officials.'  Additionally, the

Code deals here with political party officials . . . and electors.  Bribery and intimidation

of witnesses are dealt with in Section 2C:28-6."  Final Report, Comment 2, at 264.  Thus,

it does not appear that the statute contemplated candidates within the scope of persons to

which it applied.

 The Government argues that the second paragraph of the statute serves to broaden

the application of subsections (a) and (d) in its statement that, "[i]t is no defense to

prosecution under this section that a person whom the actor sought to influence was not

qualified to act in the desired way whether because he had not yet assumed office, or

lacked jurisdiction, or for any other reason."  N.J.S.A. 2C:27-2.  Specifically, the

Government contends that Defendant has no defense to prosecution under the statute on

the basis that he was not qualified to act as Mayor of Jersey City, had not yet assumed

that office, lacked jurisdiction over the granting favors to Mr. Dwek or a promotion to Mr. Khalil, or for any other reason. (Pl. First Opp'n Br., at 10-11).

However, a closer look at the statute reveals a fundamental ambiguity as to its application. The statute is worded to include two individuals: a "person" and the "actor." The "actor" is presumably the person being prosecuted under the statute, and substituting Defendant's name for the "actor" in the statute, it would read: "It is no defense to prosecution under this section that a person whom [Manzo] sought to influence was not qualified to act in the desired way whether because he had had not yet assumed office, or lacked jurisdiction, or for any other reason." Defendant Manzo, however, was not the individual seeking to influence a public official as he was the bribe recipient. It was Mr. Dwek, as the bribe giver, who was seeking to influence a potential future public official, and replacing his name as the "actor" reveals that the statute as written was intended to apply to bribe givers rather than bribe receivers: "It is no defense to prosecution under this section that a person [Manzo] whom the actor [Dwek] sought to influence was not qualified to act in the desired way . . . ."

This reading is fortified by the New Jersey Standard Criminal Jury Instructions (2011), which divide instructions according to whether the defendant is a "bribe giver" or a "bribe recipient." Jury instructions to bribe givers incorporate the charge, if applicable, "It is no defense to bribery that a person whom the actor sought to influence was not qualified to act in the desired way whether because he/she had not assumed office, or lacked jurisdiction or for any other reason." N.J.C.R. J.I. 2C:27-2, "Bribery in Official and Political Matters (Bribe Giver)." Jury instructions to bribe recipients do not incorporate that charge or the availability of the "not qualified to act" defense at all,

listing as the only applicable limitation on defenses the following: "It is no defense to bribery that a person who solicited, accepted or agreed to accept a benefit did so as a result of conduct by another constituting theft by extortion or coercion or an attempt to commit either of those crimes." N.J.C.R. J.I. 2C:27-2, "Bribery in Official and Political Matters (Bribe Recipient)."

Further, the Final Report of the New Jersey Criminal Law Revision Commission on § 2C:27-2 states that the "second paragraph of this Section as to lack of jurisdiction, etc., is our law," citing to only one case to elucidate the source of the underlying principle, State v. Ellis, 33 N.J.L. 102 (1868). In that case, defendant Ellis was indicted for offering to a member of the common council of Jersey City the sum of $50 to vote in favor of his application to lay a railroad track along one of the public streets of that city. Id., at 103. The New Jersey Supreme Court was asked to quash the indictment, inter alia, on the grounds that the common council did not have jurisdiction to grant the application for which the vote was sought to be bought. The Court found that "it is immaterial whether council had or had not jurisdiction over the subject matter of the application. If the application was, in point of fact, made, an attempt to procure the votes for it by bribery was criminal. The offense is complete when an offer of reward is made to influence the vote or action of the official. It need not be averred, that the vote, if procured, would have produced the desired result, nor that the official, or the body of which he was a member, had authority by law to do the thing sought to be accomplished." Id., at 105. That the Comments on the statute point only to Ellis indicates that the scope of the unavailability of the defense was limited to bribe givers since the offense was deemed "complete" when the offer of reward was made to the

official by the bribe giver, regardless of whether the official had the authority or jurisdiction to act in favor of the benefit exchanged for.

The language of the statute at issue thus does not provide sufficient support of the inclusion of candidates for public office who are never elected to an official position. In addition, case law interpreting the breadth of the application of New Jersey's bribery statute supports this construction as it neither contains any examples in which candidates unelected to office were convicted of bribery nor does it contain precedent broad enough to proscribe the conduct alleged in the Indictment.

### c. Case Law Interpreting the New Jersey Bribery Statute

In their analysis of New Jersey's bribery statute, federal and state courts have focused on the relationship between bribe givers and bribe recipients to the corruption of official action at the time of exchange and as each party's role was presented at that time. The first prominent case defining the parameters of the bribery statute's application to non-public officials was State v. Sherwin, 127 N.J. Super.370 (App. Div. 1974). In Sherwin, defendants Paul C. Sherwin, then Secretary of State of New Jersey, and William C. Loughran, then solicitor of funds for the Republican Party, were convicted, inter alia, of violating N.J.S.A. 2A:93-6 for receiving a bribe in the sum of $10,000 from Michael Manzo, the head of Manzo Contracting Co., to procure acts connected with the Department of Transportation, namely, preferential treatment in favor of Manzo Contracting, the second lowest bidder on a road construction project, and the rejection of the lowest bid of Manzo's competitor, Centrum. Id., at 384. In Sherwin's defense, he argued that he did not possess the necessary corrupt intent under the statute because he did not know of the $10,000 contribution made by Manzo as it was handled through

Loughran, who did not tell him that he was soliciting said contribution from Manzo. Id.
The court rejected that argument in stating as follows:

> The necessary corrupt intent is supplied simply by showing that the opportunity
> was used to perform a public duty as a means of acquiring an unlawful benefit.
> Whether the benefit was received personally by defendant is immaterial, . . . and it
> matters not whether Loughran or Sherwin had power themselves to bring about a
> rejection of the lowest bid. The statute, N.J.S.A. 2A:93-6, does not require that
> the person receiving the bribe do so "under color of his office," as does the
> section proscribing statutory extortion. The offense of receiving a bribe under
> N.J.S.A. 2A:93-6 is complete upon a showing that defendant received a thing of
> value as a bribe to procure any act appertaining to any office or department of
> government.

Id., at 385 (citations omitted). This language has been taken up in subsequent case law,

including State v. Ferro, 128 N.J. Super. 353 (App. Div. 1974), and State v.

Schenkolewski, 301 N.J. Super. 115 (App. Div. 1997), to be discussed in detail below,

and the Government argues that the "under color of his office" language distinguishes the

New Jersey bribery statute from statutes like the Hobbs Act in that it is both broader in its

application and applicable to those without actual, present authority to act. (Pl. First

Opp'n Br., at 14-16). However, contextualizing the language of the case with both the

history, commentary and prior case law in New Jersey informing the drafting of § 2A:93-

6, the Appellate Division appears to be repeating the language of State v. Ellis, which

strongly asserts that lack of jurisdiction over a given or pending matter is no defense to

bribery. The court reiterates in Sherwin that, whether or not defendant Sherwin had

authority to act in the context of a Department of Transportation matter as the Secretary

of State is irrelevant to a finding of corrupt intent in receiving a bribe as a public official.

The case does not go so far as to say that a conviction under the bribery statute need not

involve official action by any individuals vested with public authority at all at the time at

which a pecuniary benefit was exchanged for a political favor.

In State v. Ferro, the Appellate Division was asked to consider whether a conviction was valid under N.J.S.A. 2A:93-6 if the defendant, a former leader of the Democratic party in a section of Jersey City, held no official public position when he allegedly received bribes to use his apparent power and influence in the Probation Department of Hudson County and in New Jersey courts to enable favorable dispositions for two bribe givers. 128 N.J. Super. 353 (App. Div. 1974). In finding that the defendant need not occupy the position of a public official at the time of the offense as a prerequisite for conviction, the Court held that defendant's feigned power at the time the bribe was exchanged was sufficient to bring his acts within the scope of the statutory prohibition. The court significantly established a clear standard regarding the application of the statute to non-public officials: "the language [of 2A:93-6] omits any requirement that the prohibited action involve the actual participation of an official. Rather, the bribe must be directed towards official action. The offender, as the recipient of the bribe, must only have or create an understanding with the briber that he can influence matters in connection with an official duty. Whether he is capable of actually effecting such an act is irrelevant." Id., at 358. In coming to this determination, it is critical to make two notes: (1) the predecessor statute, prohibiting receipt of a bribe for any act "connected with or appertaining to any office or department of government," was much broader than the instant statute, which breaks apart into four, detailed subsections (§ 2C:27-2(a)-(d)) the exact nature of the consideration required to be given for the bribe to constitute a violation; and (2) the language broadens the requirement from actual possession of public authority to apparent or feigned possession of public authority, but there is no doubt that the corrupt act targeted is that of a bribe recipient's exchanging the use of his existing

authority or fraudulently represented existence of or access to authority to affect official matters with the bribe giver at the time of exchange. The court continues that "[t]he most reasonable interpretation of [§ 2A:93-6] is that it was designed to broaden the offense of bribery so as to include the peddling of influence by a person in an apparent position of access to a public official." Id., at 359-60. The court uses the present tense to indicate that the feigned and apparent authority presented to a bribe giver by a bribe recipient is about present access to political channels, and it would be nonsensical to include candidates as those in an "apparent position of access to a public official." Candidates, rather, do not take on an "apparent position" of actual power or access but rather are in a different category, promising future access, if at all. In other words, the "apparent" nature of the power contemplated is structural rather than one of temporal deferral or pure conjecture based on a potential interest. This is fortified by the court's statement, cited infra, that "[t]he enactment of N.J.S.A. 2A:93-6 can thus fairly be considered to have completed a legislative scheme which has become apparent over the years, i.e., to penalize those in an apparent position of trust who would utilize their position or relationship to influence some governmental activity of [a] public official." Id., at 361.

The Appellate Division continued this line of reasoning in State v. Schenkolewski, 310 N.J. Super. 115 (App. Div. 1997). In Schenkolewski, the State appealed the dismissal of its indictment against, inter alia, defendant Rabbi Yisroel Schenkolewski, chairman of the Zoning Board of Adjustment of Lakewood, liaison to the Mayor of Lakewood on matters between the Zoning Board and the Planning Board of Lakewood, rabbi and principal of a girls' religious high school, for his alleged acceptance of money from co-defendant Martin Buckley in exchange for his agreement to support a

controversial cogeneration facility that Buckley's company was proposing to build in the town of Lakewood. Id., at 121. Specifically, Schenkolewski had allegedly promised to Buckley that he would utilize his considerable influence among his constituents to secure the vote of the Lakewood Township Committee to settle a pending lawsuit involving the facility and to transfer the land for the facility's construction, as chairman of the Zoning Board and as liaison to the Planning Board. Id., at 138. The court found that a factfinder could reasonably conclude that Schenkolewski accepted payment as consideration for using his influence to insure favorable action by the Committee, regardless of whether Schenkolewski in fact could or did influence such matters: "it is sufficient if the recipient created the understanding with the briber that he could influence matters in connection with an official duty, whether or not he was capable of actually effecting such an act." Id. at 138-140. The case, therefore, mirrors the language of Sherwin and Ferro analyzed above, and serves as another example of courts interpreting New Jersey's predecessor bribery statute as focusing on the ability or feigned ability to influence at the time of receipt of the bribe. What the Appellate Division does in Schenkolewski is to bring that line of interpretation to its interpretation of the current bribery statute, N.J.S.A. 2C:27-2, in stating that the prohibition of bribery is not limited to those with actual influence at the time of exchange, but also extends to those bribe recipients who create the understanding at that time that they can influence matters in connection with official acts. See id., at 139.

The scope of the application of the New Jersey bribery statute to non-public officials was also raised in United States v. Dansker, 537 F.3d 40 (3d Cir. 1976). In Dansker, as discussed infra in Section III.A.1.b.i., defendant Nathan Serota, the vice-

chairman of the Fort Lee Parking Authority, was convicted of a Travel Act violation for the predicate offense of bribery under N.J.S.A. 2A:93-6. In finding the conviction invalid, the Third Circuit stated that an overbroad interpretation of the New Jersey bribery statute may "run afoul of the [F]irst [A]mendment," and that it could not be literally construed to, "by its terms, make[] it unlawful for any individual to accept any benefit in exchange for his agreement to influence any official action in any manner." Id., at 48. Rather, the Third Circuit interpreted the case law generated from Sherwin and Ferro to mean that the "only expansion of the common law crime seemingly effected by the state is that any individual may be convicted of accepting a bribe if he in fact possesses, or creates the understanding that he possesses, the ability to influence official conduct. . . . The recipient must agree to utilize whatever apparent influence he might possess to somehow corrupt a public office or an official act." Id. (emphasis added). The Court uses the present tense in its circumscription of the requisite elements of the offense, and that is made more apparent when the Court states the following requirements to establish a violation of the statute: "it must be demonstrated: (a) that the alleged recipient, whether he be a public official or not, possessed at least the apparent ability to influence the particular public action involved; and (b) that he agreed to exert that influence in a manner which would undermine the integrity of that public action." Id., at 49. Again, the Court focuses on the structural relations between the parties at the time of exchange with respect to a specific public action sought to be influenced with the power possessed at that time. In discerning the nature of Serota's influence at the time that he exchanged his vocal opposition to the shopping center complex construction for a money payment, the Court found that, "the only influence, discernible from the record, which Serota

possessed in these matters was that derived from his activities as a private citizen vocally opposing the project's development." Id., at 50. The Court continues by adding that, "[c]ertainly, [Serota's] public reversal of his prior stance against the project, even if motivated by financial considerations, could not subvert the integrity of that governmental body. Nor would his efforts to induce his slate of candidates to endorse a limited project since they obviously possessed no authority whatsoever in these matters prior to their election." Id. (emphasis added). Likewise, the only influence discernible, from the facts alleged in Defendant's Indictment, which Defendant possessed in these matters were clearly those derived from his activities as a private citizen attempting to gain a public position which he did not in fact possess prior to his election nor did he subsequently possess as a failed candidate.

Finally, and significantly, there is no example in federal or state case law in which the only "public official" or individual able or feigning ability to influence official conduct in a bribery scheme in violation of the New Jersey bribery statute was a candidate for public office who was never elected. The Government's citations to State v. Woodward, 298 N.J. Super. 390 (App. Div. 1997), and State v. Lake, 408 N.J. Super. 313 (App. Div. 2009), for support are unavailing in this regard. In Woodward, the issue before the court was whether an offer by a candidate for public office to withdraw his candidacy and endorse the incumbent Jersey City Council office holder in return for money and a public job violated N.J.S.A. 2C:27-2. Id., at 392. In that case, the defendant non-public official was the "bribe giver" and the incumbent office holder was the "bribe recipient." The court found that defendant bribe giver's "offer to withdraw his candidacy and endorse his opponent constituted an offer of a 'benefit' in return for the

incumbent's 'performance of official duties,' his appointment to a municipal job." Id., at 394. Thus, the case affirms the necessity of some official conduct influenced or attempted to be influenced at the time of exchange on the part of the bribe recipient, which is not present in the facts alleged against Defendant in the Indictment.

In State v. Lake, defendant John Lake was the mayor of the Township of Carneys Point running for reelection as a Republican candidate in the November 2006 general elections, and was convicted, inter alia, of bribery in violation of N.J.S.A. § 2C:27-2. 408 Super. 313 (App. Div. 2009). Anthony Rullo, the Democratic candidate, was running against defendant, and defendant allegedly approached Rullo, proposing that he withdraw as a candidate in exchange for: (1) a guaranteed reappointment to the Sewerage Authority when his term expired; and (2) a promise to arrange for part-time mechanical work for the Sewarage Authority, which would enable him to earn extra money. Id., at 317. The Court upheld the trial judge's determination that the promised benefits exchanged—running unopposed as an incumbent in the upcoming election in consideration for providing pecuniary and professional benefits to the withdrawing candidate—had sufficient evidentiary support to warrant a correct finding of guilt of second-degree official misconduct and bribery. Id., at 322-23. Lake is distinguishable from this case in two respects: (1) the candidate prosecuted was the incumbent mayor in a position of public authority for bribing the only candidate opposing him; and (2) the candidate was reelected as a direct result of his bribing said opposing candidate. Thus, in that case, the public harm was clear: a public official, from his position of authority, offered a position of employment to his only competitor for reelection, and in doing so, was reelected and placed in a position to fulfill said offer. In this case, not only was

Defendant never elected, but he did not maintain any position of public authority during the period alleged in the Indictment. He was therefore not in a position to create the kind of public harm at issue in <u>Lake</u>.

In conclusion, the Court finds insufficient support from a strict construction of the New Jersey statute, an evaluation of its legislative history, and case law to support the charge in the Indictment that Defendant engaged in "unlawful activity" in violation of N.J.S.A. § 2C: 27-2. Accordingly, while the Court finds no ambiguity with respect to the morally reprehensible nature of Defendant's conduct as alleged in the Indictment, the rule of lenity requires abstention from expanding the scope of criminal liability to that conduct as alleged involving a candidate for public office who is never elected.

## B. Dismissal of Misprision of Felony Count (Count III)

Count 3 of the Indictment alleges that, from in or about February 2009 to in or about July 2009, Defendant,

> having knowledge of the actual commission of felonies by Edward Cheatam and Ronald Manzo (namely, conspiring to violate and violating the Travel Act . . . by traveling in interstate commerce to establish, promote, manage, carry on and facilitate a bribery scheme, contrary to N.J. Stat. 2C:27-2) that was cognizable by a Court of the United States, did conceal (by filing campaign finance reports with the New Jersey Election Law Enforcement Commission that intentionally did not disclose the receipt of monies from the CW) and not as soon as possible make known the same to some judge and other person in civil authority under the United States.

(Indictment, at 22). Pursuant to 18 U.S.C. § 4, a person is guilty of misprision of felony if,

> having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 4. Applying the same analysis as above to principals Mr. Ronald Manzo and Mr. Cheatam regarding the application of the New Jersey bribery statute to the conduct alleged in the Indictment, the Court also dismisses Count III of the Indictment as insufficient.

The elements of misprision of felony are: (1) the principal committed and completed the felony alleged; (2) the defendant had full knowledge of that fact; (3) the defendant failed to notify authorities; and (4) the defendant took steps to conceal the crime. United States v. Gebbie, 294 F.3d 540, 544 (3d Cir. 2002). The Indictment does not specify which provision of the New Jersey bribery statute Mr. Ronald Manzo and Mr. Cheatam allegedly violated, but under even a cursory reading of the statute in light of this Court's findings regarding their application to Defendant Manzo, the first element of the crime of misprision is not met in the Indictment as alleged.

First, the Court notes that the principals are charged with engaging in facilitating or soliciting a bribe of a candidate. Since the Court does not find Defendant Manzo's conduct unlawful, principals Mr. Ronald Manzo and Mr. Cheatam cannot be found to facilitate it as a crime. Second, no subsection of the § 2C:27-2 adequately applies to either Mr. Ronald Manzo or Mr. Cheatam. Mr. Ronald Manzo's conduct does not violate subsections (d) or (a) in that he did not solicit, accept, or agree to accept from Mr. Dwek any benefit as consideration for the performance of official duties or a decision, opinion, recommendation, vote or exercise of discretion of any public servant, party official or voter on any public issue or in any public election under: (1) the statute's own definition of "public servant," "party official," or "voter"; (2) this Court's analysis of those provisions as they relate to Defendant Manzo; and (3) this Court's interpretation as to the

unavailability of the "not qualified to act" defense as it applies to Defendant in this context. Mr. Cheatam's conduct also does not violate subsections (d) or (a) for the same reasons since, even though he was the affirmative action officer for Hudson County and a Commissioner on the Jersey City Housing Authority in Jersey City, the specific allegations in the Complaint tie his felonious conduct to the solicitation of a bribe of Defendant <u>Manzo</u> and in no way relate to promises to act in his own official capacity. The Indictment and the Government's briefing does not allege the violation of § 2C:27-2(b) or (c) by Defendant or the principals under the Third Count. Since the facts as alleged in the Indictment are insufficient to establish the first element of the offense, the Court finds Count III of the Indictment insufficient, and it is dismissed.

## C. Motion for Discovery of and an Evidentiary Hearing on the Grand Jury Proceedings

Defendant requests discovery of and an evidentiary hearing on the grand jury proceedings in this matter on the basis of alleged "mistakes or omissions" in the Indictment which may have misled the grand jury, including: (1) the mistaken statement in the Indictment that Ronald Manzo was Louis Manzo's campaign manager; and (2) an alleged lack of fulfillment on the part of the Government in presenting exculpatory evidence regarding Ronald Manzo's testimony at the trial of <u>United States v. Elwell</u>. (Def. First Br., at 33-35). Since this Court has dismissed all three Counts of the Indictment, the question of the instructions to the Grand Jury related to these charges is moot. Defendant's motion for discovery and an evidentiary hearing is denied.

## D. Government Misconduct

In light of the Court's dismissal of all Counts of the Indictment, and with no charges left pending before the Court, the Court dismisses as moot Defendant's pending

motions alleging prosecutorial misconduct with respect to: selective prosecution; conflicts of interest; mishandling of the Government's cooperating witness, Mr. Dwek; lack of preservation of text messages during the course of the investigation; and improper conduct in possessing Defendant's bank records.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that payment under the circumstances of this case to Louis Manzo, in exchange for the promise of future conduct in the public office once obtained, does not fall within the generic definition of bribery within the plain language and intent of 18 U.S.C. § 1952. The Court further finds that the facts as alleged in the Indictment are insufficient to constitute "unlawful activity" under N.J.S.A. § 2C:27-2. Finally, the Court finds Count III of the Indictment charging Misprision of Felony in violation of 18 U.S.C. § 4 insufficient on the facts alleged. Accordingly, for the reasons set forth above, this Court: (1) grants Defendant's motion to dismiss all counts in the Indictment; (2) denies Defendant's motion for discovery of and an evidentiary hearing on the grand jury proceedings; and (3) denies Defendant's motion to dismiss the Indictment based on prosecutorial misconduct. An appropriate Order accompanies this Opinion.

DATED: February 17, 2012

Jose L. Linares
United States District Judge