**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No.: 09-759 (JLL) |
| Plaintiff, | |
| v. | **ORDER** |
| LOUIS M. MANZO, | |
| Defendant. | |

This matter comes before this Court by way of Defendant Louis M. Manzo ("Defendant")'s Petition for an Order and Findings that Defendant is entitled to attorneys' fees payable to the United States Department of Justice and/or the Federal Bureau of Investigation pursuant to the Equal Access to Justice Act of 1948, 28 U.S.C. § 2412 and 18 U.S.C. § 3006A (also known as the "Hyde Amendment"). [Docket Entry No. 88]. The Court has considered the submissions of the Defendant and the opposition filed thereto by the Government, and for the reasons stated herein, DENIES Defendant's Petition.

### I. LEGAL STANDARD

The Hyde Amendment provides, in relevant part:

> The court . . . may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust.

Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997)(reprinted in 18 U.S.C. § 3006A). The Hyde Amendment "places a daunting obstacle before defendants who seek to obtain attorney fees and costs from the government following a successful defense of criminal charges." United

States v. Isaiah, 434 F.3d 513, 519 (6th Cir. 2006)(citing United States v. Gilbert, 198 F.3d 1293, 1302-02 (11th Cir. 1999)). Specifically, a "defendant must show that the government's position underlying the prosecution amounts to prosecutorial misconduct–a prosecution brought vexatiously, in bad faith, or so utterly without foundation in law or fact as to be frivolous." Gilbert, 198 F.3d at 1299. The defendant bears the burden of meeting any of the three grounds under the statute, and acquittal by itself does not suffice. United States v. Shaygan, 652 F.3d 1297, 1311 (11th Cir. 2011); United States v. Capener, 608 F.3d 392, 401 (9th Cir. 2010); Isaiah, 434 F.3d at 519; United States v. Knott, 256 F.3d 20, 28 (1st Cir. 2001).

Since the Third Circuit has not defined the terms "position," "vexatious," "frivolous" and "bad faith" in interpreting the Hyde Amendment, this Court will look to other Courts of Appeals' definitions of the same. First, to define "vexatious," the Fourth, Sixth and Eleventh Circuits looked to the Black's Law Dictionary definition and adopted the meaning stated therein as "without reasonable or probable cause or excuse." Heavrin, 330 F.3d at 728 (citing United States v. True 250 F.3d 410, 423 (6th Cir. 2001)). The First Circuit has held that "a determination that a prosecution was 'vexatious' for the purposes of the Hyde Amendment requires both a showing that the criminal case was objectively deficient, in that it lacked either legal merit or factual foundation, and a showing that the government's conduct, when viewed objectively, manifests maliciousness or an intent to harass or annoy." Knott, 256 F.3d at 29. Courts have defined "frivolous" to mean "groundless[,] . . . with little prospect of success . . . ." Heavrin, 330 F.3d at 728 (citing Gilbert, 198 F.3d at 1999). Therefore, a case is deemed "frivolous" when the government's position "[i]s foreclosed by binding precedent or [is] so obviously wrong as to be frivolous." Capener, 608 F.3d at 401. The definition of "frivolous" should not be so restrictive

as to limit the government from basing "a prosecution on a novel argument, so long as it is a reasonable one, without fear that it might be setting itself up for liability under the Hyde Amendment. Just because the government lacks 'precedent' does not automatically mean that its position is frivolous." Heavrin, 330 F.3d at 729. "Frivolous" prosecution can be distinguished from "vexatious" prosecution in that "the term 'vexatious' embraces the distinct concept of being brought for the purpose of irritating, annoying, or tormenting the opposing party." Id. "Bad faith" means "not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity . . . it contemplates a state of mind affirmatively operating with furtive design or will." Gilbert, 198 F.3d at 1299. The test for determining whether a prosecution was pursued in "bad faith" is an objective one. See Shaygan, 652 F.3d at 1314. Finally, in assessing whether the "position" of the United States was vexatious, frivolous or in bad faith, a court should "make only one finding, which should be based on the case as an inclusive whole. . . . A count-by-count analysis is inconsistent with this approach." Heavrin, 330 F.3d at 730 (citations and quotation marks omitted). When the legal issue is one of first impression, a court is discouraged from finding bad faith so as not to "chill the ardor of prosecutors and prevent them from prosecuting with earnestness and vigor. The Hyde Amendment was not intended to do that." Gilbert, 198 F.3d at 1303.

## II. DISCUSSION

Defendant has failed to establish that the Government's conduct rises to the level of being "vexatious," "frivolous," or "in bad faith."[1] First, the Government's prosecution was not

---

[1]The Court further notes that Defendant has failed to proffer supporting documentation or an affidavit demonstrating that his net worth did not exceed $2 million in accordance with the Equal Access to Justice Act ("EAJA") requirements incorporated into the Hyde Amendment.

"vexatious" as it was not objectively deficient, and Defendant fails to meet his burden in establishing that the Government's conduct was malicious or intended to harass or annoy. While the Government presented a novel legal theory regarding the application of the Travel Act's bribery prohibition to Defendant's conduct as a candidate for political office, this Court's Opinion dismissing the Second Superseding Indictment did not find said theory objectively deficient. Rather, the Court determined that the question of whether unelected candidates may be included in bribery prohibitions generically conceived under the Travel Act, a question that had not been considered by the Third Circuit and that had no binding precedent to aid in its determination, required a broad assessment of bribery prohibitions under common law and State bribery statutes. (See February 17, 2012 Opinion, at 24). Ultimately, the Court found that the Travel Act could not be deemed to proscribe conduct by unelected candidates, but the claim that the Travel Act could proscribe such conduct prior to this Court's consideration of the issue cannot be deemed an approach lacking any legal merit. Further, the factual foundation as alleged in the Second Superseding Indictment was extensive, documenting conversations between Defendant, Solomon Dwek (the Cooperating Witness), Ed Cheatem and Jack Shaw, amongst others, regarding contributions to Defendant's campaign in exchange for expediting Mr. Dwek's fictional development project and the promotion of Maher Khalil. (Id., at 2-8). This factual basis was supported by audio recordings in which Defendant expressly acknowledged that he was

---

See 28 U.S.C. § 2412(d)(1)(D)(2)(B)(I); Knott, 256 F.3d at 26-27 (net worth limitation in EAJA applies to the Hyde Amendment); Heavrin, 330 F.3d at 731-32 (same); United States v. Aisenberg, 358 F.3d 1327, 1339 (11th Cir. 2004)(same). Defendant also fails to itemize the hours sought, the work done, and the rate used to compute the fees and expenses as required under the Hyde Amendment. See 18 U.S.C. § 3006A(d)(5); United States v. Ranger Electronic Communications, 210 F.3d 627, 632 (6th Cir. 2000).

agreeable to promoting Mr. Khalil within Jersey City government and to assisting Mr. Dwek with his purported development project in Jersey City in exchange for payments. (Id.).

Defendant also fails to meet his burden that the Government's conduct was malicious or intended as harassment. First, the Government did not persist in prosecuting the Defendant in contravention of earlier decisions of this Court and the Third Circuit since: (1) the Travel Act counts that survived Defendant's initial motion to dismiss were returned in the Second Superseding Indictment following this Court's initial determination that "the plain reading of the [New Jersey bribery] statute is that it encompasses prosecutions" of candidates (Trans. of March 23, 2010 Hearing, at 48); and (2) the Third Circuit found, in affirming this Court's dismissal of the original Hobbs Act counts as applied to Defendant, that the case presented "a significant and novel question, creatively framed and well presented by the government," United States v. Manzo, 636 F.3d 56, 61 (3d Cir. 2011). Second, the Government's conduct cannot be found malicious or intended to harass on the basis of any statements made by Defendant's brother, Ronald Manzo, during the trial of former Secaucus Mayor Dennis Elwell because the Government had recordings it could have used as evidence in Defendant's trial during which both Roland Manzo and Defendant acknowledged that Defendant had received money from Mr. Dwek. (See Elwell Tr. at p. 4.138, l. 10 to p. 4.139, l. 8). Further, the charges filed against Defendant under the Travel Act did not require that Defendant physically take possession of the cash to constitute "a subsequent overt act in furtherance of the unlawful activity." Therefore, the Court agrees with the Government that its prosecution of Defendant, despite the testimony of Ronald Manzo in the Elwell trial and its alleged failure to present such testimony as exculpatory

5

evidence before a Grand Jury, does not constitute "vexatious" prosecution.[2]

To the extent that Defendant's arguments alleging selective prosecution can be construed as malicious or based in an intent to harass, the Court finds that Defendant has failed to establish with clear evidence the requisite elements of such a claim under United States v. Armstrong, 517 U.S. 456, 464 (1996). First, Defendant fails to show that the federal prosecutorial policy had a discriminatory effect in that other, similarly situated individuals without the protected characteristic held by the Defendant–in other words, unelected candidates who were not Democrats–could have been prosecuted, but were not. See id. Second, Defendant fails to establish that the policy was motivated by a discriminatory purpose. Id., at 465. Defendant does not provide names of similarly situated Republicans that the Government declined to prosecute. The first three individuals listed by Defendant—the Ocean County Republican Chairman, the Republican Party Fundraiser, and the Hudson County Republican Chairman—are not alleged by Defendant to have committed a like crime as Defendant: agreeing to accept payments to corrupt a public office that any of them sought to hold. Rather, they are listed as "targets" of Mr. Dwek,

_____

[2] The Court finds that Defendant's arguments pertaining to materials presented to a Grand Jury unconvincing for the additional reason of its speculative nature. Specifically, Defendant asserts in his brief that, "[s]ince Ronald Manzo concluded his testimony on June 23, 2011, and the indictment against Louis Manzo was returned within days, it is extremely doubtful that the Grand Jury was apprised of this crucial evidence." (Def. Br., at 25). When the Court is provided allegations of defective grand jury proceedings, in light of the strong public interest in the secrecy of such proceedings, "mere speculation that such improprieties have occurred will not suffice to support the required showing" that grand jury material should be disclosed. United States v. Budzanoski, 462 F.2d 443, 454 (3d Cir. 1972). The prosecution is further not required to include exculpatory evidence in its presentation to the grand jury, but rather is only required to disclose such evidence with regard to trials. See United States v. Williams, 504 U.S. 36, 51 (1992); Brady v. Maryland, 373 U.S. 83 (1963). Thus, a claim for attorneys' fees under the Hyde Amendment cannot be based on the contention that the government withheld exculpatory evidence from the grand jury. See Gilbert, 198 F.3d at 1304.

and any illicit behavior alleged is limited to attempts to lure a third party to solicit Mr. Dwek into

potential contributions, none of which being substantiated. (See Def. Pet., Ex. F1, ¶¶ 1-3).

Regarding the Former Hudson County Republican Party Executive Director and the Monmouth

County Republican Party County Committee Chairman and Former Monmouth County Sheriff,

Defendant also fails to submit sufficient evidence that they were similarly situated as Defendant.

The former is mentioned in the criminal complaint of Joseph Cardwell and is alleged to have

promised "to use Dwek's money to purchase tickets for political events in exchange for [the

Executive Director's] influence." (Id., at ¶ 4). Aside from providing insufficient detail to

demonstrate how allegations regarding a middleman with unspecified political influence is

similar in material respects to Defendant, a candidate for public office who allegedly accepted

payment for the promise of approvals and a promotion once elected, the allegations in the

Cardwell matter indicate that the Executive Director turned down a $10,000 payment from Mr.

Dwek during a recorded encounter, indicating that any potential prosecution was not as strong or

stronger than the prosecution in the present matter. Finally, regarding the Monmouth County

Republican Party County Committee Chairman and Former Monmouth County Sheriff, while

Defendant alleges that said official: (1) gave Mr. Dwek tips on real estate opportunities not yet

made public; and (2) was compensated with "political contributions" in exchange for official

action, the Court does not find him to be similarly situated as Defendant. (Id., at ¶ 5). First,

Defendant provides no material similarities with respect to the alleged bribe as involving the

same crime committed in substantially the same manner as Defendant so as to contain the same

deterrence value as the pertaining to Defendant. Second, Defendant does not provide any

showing as to how the evidence against said official was strong or stronger than that against

Defendant based either on the OIA Authorization Reports or the 302s Defendant has reviewed. In addition, the Government claims that it "was unable to gather additional evidence of wrongdoing despite making affirmative attempts to do so through recording." (Letter from Eric T. Kanefsky (February 6, 2012) ("February 6 Letter"), at 2). Further, three out of the approximately nineteen individuals charged in their capacity as officials and candidates as part of the Bid Rig III investigation appear to have been affiliated with the Republican Party,[3] and numerous Republicans were prosecuted in earlier phases of Operation Bid Rig between February 2005 and 2006. Given the substantial discretion afforded federal prosecutors, the Court finds that Defendant has failed to establish the requisite similarity sufficient to show discriminatory effect under Armstrong. Defendant also fails to show with clear evidence that a discriminatory purpose motivated the policy of prosecuting candidates purportedly involved in bribery because of their political affiliation with the Democratic party. Defendant cites generally to newspaper articles, stating that the "impact that the prosecution of the Democratic office seekers in Hudson County would have on the New Jersey election for Governor" is demonstrable of discriminatory purpose. (Def. Br., at 12). However, Defendant provides no evidence, let alone the "clear evidence" required under Armstrong, of this governmental purpose based in documents circulated by the Government, statements made by the prosecuting attorneys, or other substantiating sources to support his general contention. Therefore, Defendant has failed to meet the "demanding" standard for demonstrating a claim of selective prosecution. See Armstrong, 517 U.S. at 463.

---

[3]These are Daniel Van Pelt, John Guarini (the Republic candidate for the U.S. House of Representatives, 13th District, in 2006), and Guy Catrillo.

The Court is not convinced that Defendant's allegations regarding conflicts of interest on the part of the United States Attorney's Office for the District of New Jersey and the Federal Bureau of Investigation ("FBI") since: (1) Defendant has failed to sufficiently allege selective prosecution; (2) Defendant has failed to provide the names of any individuals in the U.S. Attorney's Office who were conflicted at the time the Second Superseding Indictment was returned by a grand jury; and (3) Defendant has not asserted that the grand jury was itself impartial in returning said Indictment charging him under the Travel Act and for misprision of felony. The Court also finds unconvincing Defendant's claims that Mr. Dwek was mishandled because: (1) his classification for the purposes of the investigation in this matter as Tier One did not affect the review and approval process in this matter or the decision to prosecute the alleged criminal conduct cited in the Second Superseding Indictment; and (2) any "infractions" purportedly committed by FBI agents in completing internal authorizations for Mr. Dwek were supported only by evidence of typographical and form-filling errors, and such "infractions" do not grant Defendant a cause of action under federal law. Additionally, the Court rejects Defendant's contention that failure to preserve <u>Jencks</u> material "vital to defendant Manzo's defense and proceed[ing] to prosecute the case without intending to provide it" constituted "vexatious" conduct. (<u>See</u> Def. Br., at 14). This is because the Court dismissed the Second Superseding Indictment prior to trial, and the Jencks Act only requires production of statements of the witness in their possession "after a witness is called by the United States has testified on direct examination" at trial. 18 U.S.C. § 3500(b). Finally, Defendant's assertion that the Government was malicious in attaining his bank records without providing him notice lacks merit since Defendant has already conceded that he "knew that the government had accessed his

bank records in August 2009, after his arrest but prior to the first indictment" (Def. Br., at 22), and the Assistant U.S. Attorney Christopher J. Gramiccioni informed Defendant's counsel by letter dated April 22, 2010 that the Government was in possession of records pertaining to bank accounts associated with Defendant. (Gov't Opp'n Br., at 47).

For the aforementioned reasons, Defendant also fails to meet his burden in establishing that the Government's conduct was "frivolous" or was pursued "in bad faith." Again, while the Government argued a novel theory under the Travel Act in attempting to apply it to conduct of an unelected candidate for public office, said theory was not groundless or without any legal merit. Further, the Government cannot be construed as having acted "in bad faith" under an objective standard because, while basing the prosecution on a novel theory untested in this Circuit, the approach and legal argumentation was not objectively unreasonable.

Accordingly, **IT IS** on this 20th **day of April, 2012,**

**ORDERED** that Defendant's Petition for an award of attorneys' fees pursuant to 28 U.S.C. § 2412 and 18 U.S.C. § 3006A is **DENIED**; and it is further

**ORDERED** that Defendant's Petition is hereby **DISMISSED**.

**IT IS SO ORDERED.**

Jose L. Linares
United States District Judge

10